2015-1177

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE: AQUA PRODUCTS, INC.

**Appeal from United States Patent and Trademark Office,
Patent Trial and Appeal Board
Case No. IPR2013-00159**

## SUPPLEMENTAL BRIEF FOR APPELLANT
## AQUA PRODUCTS, INC. ON REHEARING EN BANC

JAMES R. BARNEY
TIMOTHY P. MCANULTY
DAVID K. MROZ
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Appellant
Aqua Products, Inc.*

September 26, 2016

# CERTIFICATE OF INTEREST

Counsel for Appellant Aqua Products, Inc. certify the following:

1.  The full name of every party represented by us is:

> Aqua Products, Inc.

2.  The name of the real party in interest represented by us is:

> Fluidra, S.A.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

> Fluidra, S.A.

4.  The names of all law firms and the partners or associates that appeared for the party now represented by us in the trial court or agency or are expected to appear in this Court are:

> James R. Barney
> Timothy P. McAnulty
> David K. Mroz
> Michael A. Morin[1]
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, LLP
>
>
> Jeffrey A. Schwab
> Anthony A. Coppola
> ABELMAN, FRAYNE & SCHWAB

---

[1] Mr. Morin is now with Latham & Watkins.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .............................................................i

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF RELATED CASES ..................................................xi

I.    QUESTIONS PRESENTED IN THE EN BANC ORDER ...........................1

II.   PRELIMINARY STATEMENT .....................................................1

III.  BACKGROUND ......................................................................5

    A.    Summary of Prior Proceedings ........................................5

    B.    The Statute and Regulations at Issue ................................8

IV.   ARGUMENT........................................................................11

    A.    Aqua's Response to Question No. 1 of the En Banc Order ...............11

        1.    Section 316(e) Unambiguously Requires That Petitioners Bear the Burden of Proving a Proposition of Unpatentability, Including for Proposed Amended Claims .......................................................................11

        2.    No Other Portion of the IPR Statute Imposes a Burden on the Patent Owner to Prove That Proposed Amended Claims Are Patentable.............................................19

        3.    The Grant of Authority in § 316(a)(9) to Prescribe Rules Does Not Allow the PTO to Prescribe Rules That Contravene § 316(e)..................................................21

        4.    The PTO Has Adopted an Impermissible Interpretation of the Statute, but Its Regulations Can Reasonably Be Interpreted Differently to Comport with the Statute.................25

            a.    The Board's Interpretation of the IPR Statute, Based on *Idle Free*, Is Entitled to No Deference ...........25

b.     The PTO's Rules Do Not Require Patent Owners to Bear the Burden of Proving That Proposed Amended Claims Are Patentable....................................29

5.     Under a Proper Interpretation of § 316(e), the PTO Will Not Be Forced to Issue "Untested" or "Unexamined" Claims ...............................................................................34

6.     The PTO's Interpretation of the Statute Leads to Undesirable Results..................................................40

a.     The PTO's Interpretation Places a Negative Burden on Patent Owners ...............................................40

b.     The PTO's Interpretation Upsets the Balance That Congress Struck Between the Rights of Patent Owners and Petitioners...................................41

c.     The PTO's Interpretation Results in an Incomplete Record That Is Difficult to Review on Appeal...............42

B.     Aqua's Response to Question No. 2 of the En Banc Order ................45

1.     The Board Does Not Have the Authority to Sua Sponte Raise, Address, and Decide Patentability Theories in an IPR...........................................................................45

2.     Even If the Board Could Sua Sponte Raise a Proposition of Unpatentability, It Cannot Shift the Burden to the Patent Owner or Deprive It of an Opportunity to Respond......46

C.     Under the Proper Interpretation of the IPR Statute, a Remand Is Necessary in This Case ...................................................................50

V.     CONCLUSION.............................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*,
  764 F.3d 1366 (Fed. Cir. 2014) .........................................................................12

*Artuz v. Bennett*,
  531 U.S. 4 (2000).................................................................................................39

*Badaracco v. Commissioner of Internal Revenue*,
  464 U.S. 386 (1984).............................................................................................40

*Bankamerica Corp. v. United States*,
  462 U.S. 122 (1983).............................................................................................40

*BedRoc Ltd. v. United States*,
  541 U.S. 176 (2004).............................................................................................19

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) .........................................................................49

*Bender v. Dudas*,
  490 F.3d 1361 (Fed. Cir. 2007) .........................................................................25

*Blackberry Corp. v. MobileMedia Ideas, LLC*,
  No. IPR2013-00036, Paper 65 (PTAB Mar. 7, 2014) .......................................37

*Brown v. Duchesne*,
  60 U.S. (19 How.) 183 (1856) ...........................................................................17

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
  817 F.3d 1316 (Fed. Cir. 2016) .........................................................................38

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)...............................................................................24, 27, 28

*Christensen v. Harris County*,
  529 U.S. 576 (2000).............................................................................................27

*Connecticut National Bank v. Germain*,
  503 U.S. 249 (1992).............................................................................................19

iv

*Cuozzo Speed Technologies, LLC v. Lee*,
   136 S. Ct. 2131 (2016) ...................................................................... 18

*Dell Inc. v. Acceleron, LLC*,
   818 F.3d 1293 (Fed. Cir. 2016) ......................................................... 49

*Dickinson v. Zurko*,
   527 U.S. 150 (1999) .......................................................................... 49

*Dixon v. United States*,
   381 U.S. 68 (1965) ............................................................................ 23

*Eldredge v. Department of the Interior*,
   451 F.3d 1337 (Fed. Cir. 2006) ......................................................... 28

*Eli Lilly & Co. v. Board of Regents of the University of Washington*,
   334 F.3d 1264 (Fed. Cir. 2003) ......................................................... 26

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) .......................................................................... 23

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) ......................................................... 40

*Federal Election Commission v. Democratic Senatorial Campaign Committee*,
   454 U.S. 27 (1981) ............................................................................ 34

*Fourco Glass Co. v. Transmirra Products Corp.*,
   353 U.S. 222 (1957) .......................................................................... 21

*Genzyme Therapeutic Products Ltd. Partnership v. Biomarin Pharmaceutical Inc.*,
   825 F.3d 1360 (Fed. Cir. 2016) ......................................................... 47

*Gilda Industries, Inc. v. United States*,
   622 F.3d 1358 (Fed. Cir. 2010) ......................................................... 13

*Gillette Co. v. S.C. Johnson & Son, Inc.*,
   919 F.2d 720 (Fed. Cir. 1990) ........................................................... 43

*Good Technology Corp. v. MobileIron, Inc.*,
   No. 5:12-cv-05826, slip op. (N.D. Cal. Dec. 21, 2015) ..................... 38

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982)..........................................................................................17

*Helvering v. Stockholms Enskilda Bank*,
  293 U.S. 84 (1934)...........................................................................................16

*Hospira, Inc. v. Sandoz Inc.*,
  Civ. A. No. 09-4591 (MLC), 2014 WL 794589 (D.N.J. Feb. 27, 2014)............38

*HR Technology, Inc. v. Imura International U.S.A., Inc.*,
  No. 08-2220-JWL, 2014 WL 524661 (D. Kan. Feb. 10, 2014) ........................38

*Idle Free Systems, Inc. v. Bergstrom, Inc.*,
  No. IPR2012-00027, 2013 WL 5947697 (PTAB June 11, 2013) ..........25, 26, 29

*In re: Aqua Products, Inc.*,
  823 F.3d 1369 (Fed. Cir. 2016) ....................................................................7, 29

*In re: Magnum Oil Tools International, Ltd.*,
  No. 2015-1300, 2016 WL 3974202 (Fed. Cir. July 25, 2016) ...........4, 45, 46, 48

*In re Paulsen*,
  30 F.3d 1475 (Fed. Cir. 1994) ...........................................................................42

*In re Sang-Su Lee*,
  277 F.3d 1338 (Fed. Cir. 2002) .........................................................................44

*In re Sullivan*,
  362 F.3d 1324 (Fed. Cir. 2004) ...................................................................26, 34

*In re Thrift*,
  298 F.3d 1357 (Fed. Cir. 2002) .........................................................................43

*Keene Corp. v. United States*,
  508 U.S. 200 (1993).........................................................................................17

*Kokoszka v. Belford*,
  417 U.S. 642 (1974)..........................................................................................16

*Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*,
  322 F.3d 1335 (Fed. Cir. 2003) .........................................................................12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ........................................................................13

*Lopez v. Davis*,
  531 U.S. 230 (2001) ......................................................................13

*MasterImage 3D, Inc. v. RealD Inc.*,
  No. IPR2015-00040, 2015 WL 4383224 (PTAB July 15, 2015) ......................26

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  134 S. Ct. 843 (2014) ....................................................................41

*Merck & Co. v. Hi-Tech Pharmacal Co.*,
  482 F.3d 1317 (Fed. Cir. 2007) .......................................................14

*Microsoft Corp. v. i4i Ltd. Partnership*,
  564 U.S. 91 (2011) ...................................................................*passim*

*Microsoft Corp. v. Proxyconn, Inc.*,
  789 F.3d 1292 (Fed. Cir. 2015) ......................................................*passim*

*Neder v. United States*,
  527 U.S. 1 (1999) ..........................................................................15

*Nike, Inc. v. Adidas AG*,
  812 F.3d 1326 (Fed. Cir. 2016) ......................................................*passim*

*NLRB v. Brown*,
  380 U.S. 278 (1965) ......................................................................25

*PhotoCure ASA v. Kappos*,
  603 F.3d 1372 (Fed. Cir. 2010) .......................................................28

*PPC Broadband, Inc. v. Corning Optical Communications RF, LLC*,
  815 F.3d 747 (Fed. Cir. 2016) ...................................................35, 46

*Prolitec, Inc. v. ScentAir Technologies, Inc.*,
  807 F.3d 1353 (Fed. Cir. 2015) .........................................................7

*Public Employees Retirement System v. Betts*,
  492 U.S. 158 (1989) ......................................................................28

*Rambus Inc. v. Rea*,
   731 F.3d 1248 (Fed. Cir. 2013) ...........................................................40

*Rodale Press, Inc. v. FTC*,
   407 F.2d 1252 (D.C. Cir. 1968)...........................................................49

*Russello v. United States*,
   464 U.S. 16 (1983)................................................................................18

*Sanofi-Synthelabo v. Apotex, Inc.*,
   550 F.3d 1075 (Fed. Cir. 2008) ...........................................................43

*SAS Institute, Inc. v. ComplementSoft, LLC*,
   825 F.3d 1341 (Fed. Cir. 2016) ...............................................48, 49, 50

*Smith v. City of Jackson*,
   544 U.S. 228 (2005)..............................................................................28

*Sorenson v. Secretary of the Treasury*,
   475 U.S. 851 (1986)..............................................................................16

*Space Exploration Technologies Corp. v. Blue Origin LLC*,
   No. IPR2014-01378, Paper 6 (PTAB Mar. 3, 2015) ..........................37

*Steadman v. SEC*,
   450 U.S. 91 (1981)..........................................................................14, 15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   814 F.3d 1309 (Fed. Cir. 2016) ...............................................15, 16, 42

*Utility Air Regulatory Group v. Environmental Protection Agency*,
   134 S. Ct. 2427 (2014).........................................................................42

*Velander v. Garner*,
   348 F.3d 1359 (Fed. Cir. 2003) ...........................................................40

## STATUTES

5 U.S.C. § 554(b)(3)...................................................................................49

35 U.S.C. pt. II, ch. 10 (§§ 101-105) .....................................................12

35 U.S.C. § 282.........................................................................................12

35 U.S.C. § 305 .......................................................................................18

35 U.S.C. § 311(b) .................................................................................37

35 U.S.C. § 314(a) .............................................................................23, 36

35 U.S.C. § 316 .......................................................................................19

35 U.S.C. § 316(a) ...................................................................................19

35 U.S.C. § 316(a)(2) ...............................................................................22

35 U.S.C. § 316(a)(9) .........................................................................9, 21, 24

35 U.S.C. § 316(b) ...................................................................................19

35 U.S.C. § 316(c) ...................................................................................19

35 U.S.C. § 316(d) .............................................................................*passim*

35 U.S.C. § 316(d)(1) ...............................................................................20

35 U.S.C. § 316(d)(1)(B) ......................................................................17, 30

35 U.S.C. § 316(d)(3) .......................................................................20, 30, 31

35 U.S.C. § 316(e) .............................................................................*passim*

Administrative Procedure Act, 5 U.S.C. § 706 .......................................26

## REGULATIONS

37 C.F.R. § 1.530(k) ................................................................................18

37 C.F.R. § 42.20 ..............................................................................11, 29

37 C.F.R. § 42.20(c) ..........................................................................30, 31

37 C.F.R. § 42.121 ...................................................................................10

37 C.F.R. § 42.121(a)(2) ...........................................................................31

37 C.F.R. § 42.121(a)(2)(i) .....................................................................2, 32

# OTHER AUTHORITIES

154 Cong. Rec. S9982 (daily ed. Sept. 27, 2008)....................................................47

*Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680 (Aug. 14, 2012) ............................................31, 33

H.R. Rep. No. 112-98, pt. 1 (2011).........................................................................35

MPEP § 2234 (9th ed. Rev. 07.2015, Nov. 2015) ...................................................18

Patent Trial and Appeal Board, *Standard Operating Procedure 2 (Revision 9)*, http://www.uspto.gov/sites/default/files/documents/sop2-revision-9-dated-9-22-2014.pdf ............................................................................................26

PTO, *Ex Parte Reexamination Filing Data* (Sept. 30, 2013), https://www.uspto.gov/patents/stats/ex_parte_historical_stats_roll_up_E OY2013.pdf ........................................................................................................36

PTO, *Patent Trial and Appeal Board Motion to Amend Study* (Apr. 30, 2016), https://www.uspto.gov/sites/default/files/documents/2016-04-30%20PTAB%20MTA%20study.pdf ...............................................................41

PTO, *Patent Trial and Appeal Board Statistics* (July 31, 2016), http://www.uspto.gov/sites/default/files/documents/2016-07-31%20PTAB.pdf...................................................................................................36

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the United.States Patent and Trademark Office ("PTO") was previously before this or any other appellate court.

Aqua Products, Inc. previously asserted the patent at issue in this appeal (U.S. Patent No. 8,273,183) against Zodiac Pool Systems, Inc. in the United States District Court for the Southern District of New York.  (Case No. 1:12-cv-09342-TPG.)  That case has settled.

## I.    QUESTIONS PRESENTED IN THE EN BANC ORDER

This Court has requested supplemental briefing on the following questions:

1.    When the patent owner moves to amend its claims under 35 U.S.C. § 316(d), may the PTO require the patent owner to bear the burden of persuasion, or a burden of production, regarding patentability of the amended claims as a condition of allowing them?   Which burdens are permitted under 35 U.S.C. § 316(e)?

2.    When the petitioner does not challenge the patentability of a proposed amended claim, or the Board thinks the challenge is inadequate, may the Board sua sponte raise patentability challenges to such a claim?   If so, where would the burden of persuasion, or a burden of production, lie?

## II.    PRELIMINARY STATEMENT

The text of 35 U.S.C. § 316(e) makes clear that the PTO may *not* place the burden of persuasion on patent owners to prove that proposed amended claims are patentable.   Instead, § 316(e) clearly states that, "[i]n an inter partes review . . . , the *petitioner shall* have the burden of proving a proposition of unpatentability by a preponderance of the evidence."   *Id.* (emphasis added).   Because this provision makes no distinction between original claims and amended claims, and because a "proposition of unpatentability" is a broad term that applies equally to both types of claims, it is clear that Congress intended for *petitioners* to bear the burden of

proving that proposed amended claims are unpatentable. If a petitioner fails to carry this burden, any amended claim that otherwise meets the statutory requirements of being nonbroadening and supported by the written description should be included in a published certificate as a matter of course. This was Congress's clearly expressed intent.

The Patent Trial and Appeal Board ("Board") therefore erred in interpreting the PTO's regulations as placing the burden of persuasion on Aqua—the patent owner—to prove that its proposed amended claims are patentable. This interpretation directly contradicts the statutory requirement that "the *petitioner shall* have the burden of proving a proposition of unpatentability by a preponderance of the evidence." *Id.* (emphasis added). Because Congress has spoken directly to this issue and there is no ambiguity in the statutory language, the PTO's contrary interpretation is entitled to no deference and should be reversed.

In its implementing regulations, the PTO added a nonstatutory requirement that a motion to amend must "respond to a ground of unpatentability involved in the trial." 37 C.F.R. § 42.121(a)(2)(i). Contrary to the PTO's interpretation, this provision does not place a burden of persuasion on patentees to prove that proposed amended claims are patentable, nor could it given the clear language of § 316(e). Instead, on its face, this provision merely requires a patentee to come forward with sufficient evidence to show that a proposed amendment is *responsive*,

i.e., relevant, to at least one ground of patentability at issue in the inter partes review ("IPR"). This prevents a patentee, for instance, from seeking to amend its claims to cure potential defects arising purely under 35 U.S.C. § 101 or § 112, which cannot be considered in an IPR. Thus, § 42.121(a)(2)(i) places a burden of *production* on the patentee to come forward with sufficient evidence to show that the proposed amendment is responsive to an issue in the IPR and is not being introduced for an improper purpose. Such a burden of production is permissible under the IPR statute *provided that* the ultimate burden of persuasion to show unpatentability remains with the petitioner pursuant to § 316(e).

This Court has also inquired whether the Board can sua sponte raise patentability challenges to a proposed amended claim if the petitioner fails to do so, or does so inadequately. The answer to that question is no. Because an IPR is a trial-like proceeding in which petitioners bear the burden of proving a proposition of unpatentability, there is "no support for the PTO's position that the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR. Instead, the Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond. . . . [W]hile the PTO has broad authority to establish procedures for revisiting earlier-granted patents in IPRs, that authority is not so broad that it allows the PTO to raise, address, and decide unpatentability

3

theories . . . ."  *In re: Magnum Oil Tools Int'l, Ltd.*, No. 2015-1300, 2016 WL 3974202, at \*10 (Fed. Cir. July 25, 2016) (citations omitted).

In any event, under no circumstances can the Board shift the burden of persuasion to the patent owner to prove that a proposed amended claim is patentable.  This would not only contravene the plain language of § 316(e), it would destroy the Board's role as a neutral arbiter and essentially put it in the shoes of a litigant adverse to the patent owner.  Thus, in a situation where the petitioner has dropped out or expresses no interest in addressing a proposed amended claim that otherwise meets the requirements of § 316(d), the Board should, as a matter of course, include that amended claim in a published certificate pursuant to 35 U.S.C. § 318(b).

This is not an unfair result.  First, the restrictive requirements of § 316(d) ensure that amended claims are no broader in scope than the claims that were considered *and allowed* during original prosecution.  Thus, amended claims are not untested or unexamined—they are simply narrower versions of what the PTO has already examined and granted.  Second, this result is consistent with the litigation-like nature of an IPR.  In a litigation, if a party drops an issue from the case, it typically loses on that issue.  Similarly, a substitute claim that issues during an IPR without a challenge from the petitioner is simply a byproduct of the litigation-based system that Congress created.  Other parties will be free to challenge that

claim in future IPRs, ex parte reexaminations, or in district court litigations. Also, the Director of the PTO could, on her own initiative, initiate an ex parte reexamination pursuant to 37 C.F.R. § 1.520 following the IPR proceeding.

For the reasons further explained below, this Court should reverse the PTO's interpretation of the statute and regulations to the extent it places a burden of persuasion on patent owners to prove that proposed amended claims are patentable, and remand this case to the Board with instructions to issue a certificate that includes the proposed substitute claims.

## III.  BACKGROUND

### A.  Summary of Prior Proceedings

Because the Court has asked for supplemental briefing only on the specific questions presented above, Aqua will not repeat all of the factual background that was discussed in the briefing before the Panel. Instead, Aqua will provide only a short summary here for context.

Aqua's U.S. Patent No. 8,273,183 ("the '183 patent") (A59-88) discloses and claims a jet-propelled pool cleaner that achieves controlled directional movement without an electric drive motor. A79-80 at 10:41-11:3; A83 at 18:11-20; A2786.[2] This was a major improvement in the art and the subject of a district court litigation. A2785-90; *Aqua Prods., Inc. v. Zodiac Pool Sys., Inc*., No. 1:12-

---

[2] References to "A__" refer to the Joint Appendix submitted with the briefing before the Panel.

cv-09342-TPG (S.D.N.Y.).   Aqua's competitor, Zodiac, petitioned for IPR of claims 1-14, 16, and 19-21 of the '183 patent based on four references, including U.S. Patent No. 3,321,787 to Myers ("Myers") and U.S. Patent No. 3,936,899 to Henkin ("Henkin").   The Board instituted on claims 1-9, 13, 14, 16, and 19-21, but not on claims 10-12.   A121-22.   Thereafter, Aqua moved under 35 U.S.C. § 316(d) to amend claims 1, 8, and 20 of the '183 patent, substituting them with claims 22, 23, and 24, respectively.   A2276-95.   These proposed substitute claims added key features aimed at distinguishing the cited prior art, including features recited in claims 10-12, for which the Board had denied institution.   *Id.*

In its motion to amend, Aqua explained that substitute claims 22-24 complied with 35 U.S.C. § 316(d) because they did not enlarge the scope of the original claims or introduce new matter.   A2283-85; A2395-99.   Aqua also described why the substitute claims were patentable over the various obviousness combinations relied upon by the Board in its institution decision.   A2285-93; A2400-02; A2803-06.   The Board found that Aqua's amendments complied with 37 C.F.R. § 42.121(a)(2)(ii) (and therefore 35 U.S.C. § 316(d)) because they were not broadening, did not introduce unsupported subject matter, and did not render the claims indefinite.   A39-46.   The Board then evaluated the patentability of the substitute claims, finding them unpatentable.   A46-52.   In doing so, however, the Board placed the burden of proof on Aqua, concluding that Aqua "fail[ed] to

6

demonstrate that the substitute claims [22-24] are patentable over Henkin and Myers." A52. Neither the petitioner nor the Board made any showing that the combination of Henkin and Myers would satisfy each and every limitation of substitute claims 22, 23, and 24.[3] Thus, no party in the IPR ever established by a preponderance of the evidence that the substitute claims are unpatentable.

On appeal to this Court, Aqua argued that it did not bear the burden of proving patentability for proposed amended claims because the statute expressly places this burden on the petitioner.[4] Blue Br. 35-39, 58-59; Gray Br. 26-31. The Panel rejected Aqua's argument, explaining that this Court's "precedent has upheld the Board's approach of allocating to the patentee the burden of showing that its proposed amendments would overcome the art of record." *In re: Aqua Prods., Inc.*, 823 F.3d 1369, 1373 (Fed. Cir. 2016) (citing *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1307-08 (Fed. Cir. 2015); *Prolitec, Inc. v. ScentAir Techs.*,

---

[3] Henkin and Myers both disclose conventional pool cleaners that rely on random motion to ensure that the entire pool is eventually cleaned. A2520 at 1:46-49, 2:22-26; A2521 at 4:42-57; A2523 at 7:45-65; A2510 at 1:8-11, 2:47-53. In contrast, substitute claims 22-24 were amended to require "control[led] . . . directional" movement, which is distinct from random movement. A2280-83. Neither the petitioner nor the Board ever showed that the combination of Henkin and Myers—two *random*-motion cleaners—would result in a pool cleaner capable of controlled directional motion, as required by the amended claims. *See* Blue Br. 47-49; Gray Br. 21-24.

[4] After the Board's final decision, Aqua and Zodiac settled their various litigations, including the district court litigation involving the '183 patent. Accordingly, Zodiac did not participate in this appeal. The PTO intervened and participated in the briefing and oral argument before the Panel.

7

*Inc.*, 807 F.3d 1353, 1363 (Fed. Cir. 2015); *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1333-34 (Fed. Cir. 2016)), *vacated and reh'g en banc granted* (Aug. 12, 2016).  Because of this precedent, the Panel declined to revisit the burden-of-proof issue.  *Id.*  Aqua petitioned for en banc review, and this Court's en banc order followed.

### B.    The Statute and Regulations at Issue

This appeal concerns certain provisions of the America Invents Act ("AIA") relating to evidentiary standards and the amendment of claims during an IPR, which are codified at 35 U.S.C. § 316(d) and (e).   These subsections are reproduced below:

> **35 U.S.C. § 316. Conduct of inter partes review**
> * * * *
> **(d) Amendment of the Patent.—**
>> **(1) In general.—**During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:
>>> **(A)** Cancel any challenged patent claim.
>>> **(B)** For each challenged claim, propose a reasonable number of substitute claims.
>> **(2) Additional motions.—**Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.
>> **(3) Scope of claims.—**An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.
> **(e) Evidentiary Standards.—**In an inter partes review instituted under this chapter, the petitioner shall have the

8

> burden of proving a proposition of unpatentability by a preponderance of the evidence.

35 U.S.C. § 316(d), (e).

Section 316(a)(9) instructs the Director of the PTO to prescribe regulations

> setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent . . . .

35 U.S.C. § 316(a)(9).

Pursuant to this instruction, the PTO promulgated 37 C.F.R. § 42.121,

setting forth the following procedures for amending claims during an IPR:

> **§ 42.121 Amendment of the patent.**
>
> **(a)** *Motion to amend.* A patent owner may file one motion to amend a patent, but only after conferring with the Board.
>
>> **(1)** *Due date.* Unless a due date is provided in a Board order, a motion to amend must be filed no later than the filing of a patent owner response.
>>
>> **(2)** *Scope.* A motion to amend may be denied where:
>>
>>> **(i)** The amendment does not respond to a ground of unpatentability involved in the trial; or
>>>
>>> **(ii)** The amendment seeks to enlarge the scope of the claims of the patent or introduce new subject matter.
>>
>> **(3)** *A reasonable number of substitute claims.* A motion to amend may cancel a challenged claim or

propose a reasonable number of substitute claims. The presumption is that only one substitute claim would be needed to replace each challenged claim, and it may be rebutted by a demonstration of need.

**(b)** *Content.* A motion to amend claims must include a claim listing, which claim listing may be contained in an appendix to the motion, show the changes clearly, and set forth:

> **(1)** The support in the original disclosure of the patent for each claim that is added or amended; and

> **(2)** The support in an earlier-filed disclosure for each claim for which benefit of the filing date of the earlier filed disclosure is sought.

**(c)** *Additional motion to amend.* In addition to the requirements set forth in paragraphs (a) and (b) of this section, any additional motion to amend may not be filed without Board authorization. An additional motion to amend may be authorized when there is a good cause showing or a joint request of the petitioner and the patent owner to materially advance a settlement. In determining whether to authorize such an additional motion to amend, the Board will consider whether a petitioner has submitted supplemental information after the time period set for filing a motion to amend in paragraph (a)(1) of this section.

37 C.F.R. § 42.121.

The PTO had previously promulgated a separate regulation generally governing motion practice before the Board:

### § 42.20 Generally.

**(a)** *Relief.* Relief, other than a petition requesting the institution of a trial, must be requested in the form of a motion.

(b) *Prior authorization.* A motion will not be entered without Board authorization. Authorization may be provided in an order of general applicability or during the proceeding.

(c) *Burden of proof.* The moving party has the burden of proof to establish that it is entitled to the requested relief.

(d) *Briefing.* The Board may order briefing on any issue involved in the trial.

37 C.F.R. § 42.20.

## IV.  ARGUMENT

### A.  Aqua's Response to Question No. 1 of the En Banc Order

#### 1.  Section 316(e) Unambiguously Requires That Petitioners Bear the Burden of Proving a Proposition of Unpatentability, Including for Proposed Amended Claims

In the same section of the IPR statute that allows claim amendments, § 316, the statute makes clear that, "[i]n an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence."  35 U.S.C. § 316(e).  This statutory language is broad-sweeping; Congress did not selectively confine its burden-of-proof standard to any specific type of claim (e.g., original claims).  Notably, in the subsection immediately before § 316(e), Congress prescribed its framework for amending claims during an IPR.  35 U.S.C. § 316(d).  Had it wanted to delineate a special burden of proof for the patentability of amended claims, it could have done so expressly in § 316(d).  *Cf. Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 109-10 (2011) (noting that if Congress had intended to "take

the unusual and impractical step of enacting a variable standard of proof" in 35 U.S.C. § 282, "we assume it would have said so expressly"). Instead, in § 316(e), Congress established a single, *universal* burden of proof for *any* "proposition of unpatentability" and expressly assigned that burden to the petitioner.

Congress's word choice—placing the burden on petitioners to prove "a proposition of *unpatentability*"—is significant. 35 U.S.C. § 316(e) (emphasis added). "Unpatentability" is a broad term that applies to both issued claims and pending or proposed claims (i.e., claims still under consideration). *See, e.g.*, *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366, 1378-80 (Fed. Cir. 2014) (discussing whether claims in an issued patent were "patentable" or "unpatentable" under 35 U.S.C. § 103); *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1355 (Fed. Cir. 2003) (Clevenger, J., dissenting in part) (referring to patent application claims that were "reject[ed] for unpatentability"); *see also* 35 U.S.C. pt. II, ch. 10 (§§ 101-105) ("PATENTABILITY OF INVENTIONS").

In contrast, the narrower term "invalidity," as used in title 35, typically refers to already issued claims that a challenger seeks to invalidate. *See, e.g.*, 35 U.S.C. § 282 (explaining that a "presumption of validity" attaches to issued patent claims and assigning "[t]he burden of establishing invalidity of a patent or

12

any claim thereof" to the challenger).  The presumption of validity in § 282 had been a "fixture" in patent law long before that provision was adopted, and it has remained a fixture ever since.  *i4i*, 564 U.S. at 102.  By opting for the broader concept of "unpatentability" in § 316(e), it is difficult to imagine how Congress could have been any clearer in mandating that petitioners bear the burden of proof on *all* propositions of unpatentability that arise during IPR proceedings, regardless of whether they pertain to an issued claim or a proposed substitute claim.

Congress's use of the mandatory "shall" is also significant.  *See* 35 U.S.C. § 316(e) ("In an inter partes review . . . , the petitioner *shall* have the burden of proving a proposition of unpatentability by a preponderance of the evidence." (emphasis added)).  As this Court has recognized, "[w]hen a statute directs that a certain consequence 'shall' follow from specified contingencies, the provision is mandatory and leaves no room for discretion."  *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1364 (Fed. Cir. 2010); *accord Lopez v. Davis*, 531 U.S. 230, 231 (2001) (noting Congress's "use of a mandatory 'shall' . . . to impose discretionless obligations"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").  Thus, § 316(e) must be interpreted such that the burden of proof on unpatentability *always* remains with the petitioner, regardless of whether that issue arises in conjunction with an original claim or an

13

amended claim.  The statute permits no discretion on this point.  *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317, 1322 (Fed. Cir. 2007) ("Use of the word 'shall' in a statute generally denotes the imperative.").

It is also significant that § 316(e) sets forth a burden and standard of proof—issues of paramount importance in an adjudicatory system.  As the Supreme Court held in *i4i*, "[w]here Congress has prescribed the governing standard of proof, its choice controls absent 'countervailing constitutional constraints.'" 564 U.S. at 100 (quoting *Steadman v. SEC*, 450 U.S. 91, 95 (1981)). In *i4i*, the Supreme Court addressed the presumption of validity in 35 U.S.C. § 282, which assigns the burden of proof to the party challenging validity but fails to expressly delineate a standard of proof (i.e., the quantum of evidence necessary to meet that burden).  *Id.* at 96-100.  The Court rejected Microsoft's argument that Congress did not intend to adopt the prevailing common-law standard of clear and convincing evidence when it enacted § 282.  *Id.* at 100-02.  First, the Court determined that, "by stating that a patent is 'presumed valid,' § 282, Congress used a term with a settled meaning in the common law."  *Id.* at 101.  Based on this, the Court held that, "[u]nder the general rule that a common-law term comes with its common-law meaning, we cannot conclude that Congress intended to 'drop' the heightened standard [of] proof from the presumption simply because § 282 fails to

14

reiterate it expressly." *Id.* at 102-03 (citing *Neder v. United States*, 527 U.S. 1, 23 (1999)).

Here, § 316(e) is even clearer than the provision at issue in *i4i* because § 316(e) expressly establishes both the burden *and* the standard of proof. The petitioner in an IPR must prove a proposition of unpatentability (burden) by a preponderance of the evidence (standard). 35 U.S.C. § 316(e). Because Congress squarely addressed these concepts, and because there are no "countervailing constitutional constraints," Congress's choice must control. *Id.* at 100 (quoting *Steadman*, 450 U.S. at 95).

Aqua therefore respectfully disagrees with this Court's holding in *Nike* and *Synopsys* that the burden-of-proof standard in § 316(e) only applies to issued claims that were "actually challenged in the petition for review and for which the Board instituted review." *Nike*, 812 F.3d at 1334; *accord Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1323-24 (Fed. Cir. 2016). Section 316(e) contains no such distinction. In fact, § 316(e) does not even mention "claims" but instead speaks broadly of a "proposition of unpatentability"—a concept that is conspicuously untethered to any particular type of claim. In *Nike*, the Court reasoned that because § 316(e) applies to "an inter partes review instituted under this chapter," the burden recited in § 316(e) can only apply to those claims for which the Board instituted review. *Nike*, 812 F.3d at 1332-34 (quoting 35 U.S.C.

15

§ 316(e)); *accord Synopsys*, 814 F.3d at 1323-24.  But § 316(d), which permits claim amendments, *also* expressly applies to "an inter partes review instituted under this chapter."  35 U.S.C. § 316(d).  In other words, proposed amended claims under § 316(d) become *part of* the "inter partes review instituted under this chapter" as soon as they are shown to be nonbroadening and supported by the specification.

Construing the introductory clause of § 316(e) as restricting the petitioner's burden only to the issued claims for which an IPR was instituted conflicts with the plain language and statutory purpose of § 316(d).  Neighboring subsections (d) and (e) have nearly identical introductory phrases—"[d]uring an inter partes review instituted under this chapter," and "[i]n an inter partes review instituted under this chapter," respectively.  35 U.S.C. § 316(d), (e).  These neighboring provisions with similar language should be interpreted consistently.  *See Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'" (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934))); *see also Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) ("When 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as

indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature . . . .'" (quoting *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 194 (1856))).

If the introductory phrase of § 316(e) were limited to just the original challenged claims, then the introductory phrase of § 316(d) would likewise have to be limited to the original challenged claims since the phrases are nearly identical. This, however, would lead to an absurd result because § 316(d) pertains to *amendments* to claims in an IPR, which expressly applies to more than just the original claims challenged in the petition.   "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

Further, as illustrated by the language of § 316(d)(1), Congress knew how to explicitly differentiate "challenged claim[s]" from "substitute claims." *See, e.g.*, 35 U.S.C. § 316(d)(1)(B) (referring to both a "challenged claim" and "substitute claims").   Based on Congress's decision to include this differentiation in § 316(d) but omit it in § 316(e), it can be inferred that Congress intended for the burden outlined in § 316(e) to apply equally to both challenged and substitute claims. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . ,

17

it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

This is also consistent with other provisions of the Patent Act. For example, the ex parte reexamination statute uses similar prefatory language when permitting patent owners to amend claims. *See* 35 U.S.C. § 305 ("In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent . . . ."). In ex parte reexamination, all claims (i.e., original or amended) are considered part of the proceedings and receive the same analysis from the PTO regardless of the nature of the claim. 37 C.F.R. § 1.530(k) (explaining that proposed amendments in ex parte reexaminations are immediately entered); MPEP § 2234 (9th ed. Rev. 07.2015, Nov. 2015) (explaining that amendments in ex parte reexaminations are "entered for purposes of examination"). The same logic applies to amended claims in IPR proceedings. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016) (relying on the appeal-bar provisions in the ex parte and inter partes reexamination statutes as reinforcement for its conclusion that a similar appeal bar applies in the IPR statute).

Accordingly, there is no statutory basis for limiting the otherwise broad reach of § 316(e) by restricting it only to issued claims for which the Board

instituted review.  *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)

("The preeminent canon of statutory interpretation requires us to 'presume that

[the] legislature says in a statute what it means and means in a statute what it says

there.'" (alteration in original) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S.

249, 253-54 (1992))).

### 2. No Other Portion of the IPR Statute Imposes a Burden on the Patent Owner to Prove That Proposed Amended Claims Are Patentable

Section 316 of the IPR statute, titled "Conduct of inter partes review,"

contains five subsections (a)-(e) that collectively mandate how IPRs shall be

conducted at the PTO.  *See* 35 U.S.C. § 316.  Subsection (a) requires the Director

of the PTO to prescribe regulations governing various aspects of an IPR.  *See*

35 U.S.C. § 316(a).  Subsection (b) identifies certain issues the Director must

consider in prescribing those regulations.  *See* 35 U.S.C. § 316(b).  Subsection (c)

establishes that the Board is the exclusive body for conducting "each inter partes

review instituted under this chapter."   35 U.S.C. § 316(c).   Subsection (d)

establishes the guidelines for amending a patent during an IPR.  *See* 35 U.S.C.

§ 316(d).   And the final subsection, subsection (e), establishes the evidentiary

standards for "an inter partes review instituted under this chapter."   35 U.S.C.

§ 316(e).   Importantly, subsection (e) is the *only* portion of the statute that

addresses evidentiary standards and the burden of proof during an IPR, placing the

burden of proving any "proposition of unpatentability" squarely on the petitioner. *Id.*

Subsection (d), titled "Amendment of the patent," establishes that, "[d]uring an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways: (A) Cancel any challenged patent claim.  (B) For each challenged claim, propose a reasonable number of substitute claims."  35 U.S.C. § 316(d)(1).  The only restriction on this right is that "[a]n amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter."  35 U.S.C. § 316(d)(3).  Thus, according to the plain language of the statute, a patent owner has a statutory right to file one motion during an IPR to amend the patent by, inter alia, "propos[ing] a reasonable number of substitute claims."  35 U.S.C. § 316(d)(1).  To be entitled to this relief, the patent owner need only show that the proposed amendments are nonbroadening and supported by the written description.  35 U.S.C. § 316(d)(3).  If the patent owner satisfies this burden, then the "propose[d] . . . substitute claims" should become part of the IPR proceedings, subject to the same statutory provisions that apply to *all* claims in an IPR.  *Id.*

Subsection (d) does not impose any burden on the patent owner to prove that proposed substitute claims are patentable.  To the contrary, subsection (e), which immediately follows subsection (d), establishes that the *petitioner* "shall have the

burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(e).  As explained above, this is a universal burden that applies to any claim that is part of the IPR, including any proposed substitute claims that are successfully added to the IPR pursuant to § 316(d).

### 3. The Grant of Authority in § 316(a)(9) to Prescribe Rules Does Not Allow the PTO to Prescribe Rules That Contravene § 316(e)

Section 316(a)(9) of the IPR statute grants the PTO authority to prescribe regulations "setting forth standards and procedures for allowing the patent owner to move to amend the patent." 35 U.S.C. § 316(a)(9).  This Court has previously held that, because § 316(a)(9) grants this rulemaking authority to the PTO, the PTO was within its rights to place the burden on patent owners to prove that proposed amended claims are patentable. *See Nike*, 812 F.3d at 1332-34.  Nothing in § 316(a)(9), however, addresses a burden of proof, let alone the burden of proof on patentability.  Instead, the *only* provision in the IPR statute that specifically addresses the burden of proof on patentability is § 316(e).

The Supreme Court has long held that specific provisions in a statute trump more general provisions.  *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) ("However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" (citations omitted)).  Here, the IPR statute has a

*specific* provision, § 316(e), dealing with the burden of proving a proposition of unpatentability during an IPR.  In comparison, § 316(a)(9)—directing the PTO to prescribe regulations "setting forth standards and procedures for allowing the patent owner to move to amend the patent"—is at best a *general* provision with respect to the burden of proof.

First, the phrase "standards and procedures" in § 316(a)(9) does not necessarily include the burden of proof.  Even assuming Congress intended "standards" to include standards of proof, that is still not the same as a *burden* of proof.  As the Supreme Court explained in *i4i*, a standard of proof describes the quantum of evidence necessary to prove an issue, whereas a burden of proof establishes which party must provide that evidence.  564 U.S. at 100 & n.4.  Nothing in § 316(a)(9) indicates that Congress intended to delegate authority to the PTO to establish the burden of proof associated with determining the patentability of amended claims in an IPR.

Second, the word "standards" in § 316(a)(9) does not mean the PTO was granted unlimited discretion to develop its own standards divorced from the remainder of the statute.  For instance, an analogous provision, § 316(a)(2), instructs the PTO to set forth "the *standards* for the showing of sufficient grounds to institute a review under section 314(a)."  35 U.S.C. § 316(a)(2) (emphasis added).  Yet § 314(a) very clearly instructs that "[t]he Director may not authorize

an inter partes review to be instituted unless the Director determines that the information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Thus, although § 316(a)(2) nominally authorizes the PTO to promulgate "standards" associated with the institution decision, the statute elsewhere dictates precisely what that standard must be (i.e., reasonable likelihood of prevailing on at least one claim). Likewise, although § 316(a)(9) authorizes the PTO to promulgate "standards . . . for allowing the patent owner to move to amend the patent," the statute elsewhere dictates certain aspects of that procedure that are not within the PTO's discretion, including that the burden of proving a proposition of unpatentability "shall" rest squarely on the petitioner.

In short, the rulemaking authority in § 316(a)(9) does not include the authority to issue regulations that conflict with other portions of the statute. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'" (quoting *Dixon v. United States*, 381 U.S. 68, 74 (1965))). Because there is a specific requirement in the IPR statute that a "petitioner *shall* have the burden of

23

proving a proposition of unpatentability," 35 U.S.C. § 316(e) (emphasis added), any implementing regulation that shifts this burden from the petitioner to the patent owner (i.e., to prove patentability) would be invalid as contrary to the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (holding that regulations "must give effect to the unambiguously expressed intent of Congress").

Section 316(a)(9) also requires the PTO to promulgate regulations that "ensur[e] that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent." 35 U.S.C. § 316(a)(9). The Court in *Nike* cited this provision as evidence that "the patent owner carries an affirmative duty to justify why newly drafted claims . . . should be entered into the proceeding." 812 F.3d at 1333-34. But this provision is also entirely consistent with § 316(d)(3), which requires the patent owner to establish that a proposed amendment will not broaden the scope of the claims or add new matter. In other words, there has never been any dispute that the patent owner "carries an affirmative duty" to show that the requirements of § 316(d)(3) are satisfied before an amended claim can be "entered into the proceeding." *Id.* That does not mean, however, that the patent owner bears the ultimate burden of proving that the

proposed amended claim is patentable.  To the contrary, the opposite burden of

proving *unpatentability* rests squarely with the petitioner pursuant to § 316(e).

> **4.    The PTO Has Adopted an Impermissible Interpretation of the Statute, but Its Regulations Can Reasonably Be Interpreted Differently to Comport with the Statute**
>
> **a.    The Board's Interpretation of the IPR Statute, Based on *Idle Free*, Is Entitled to No Deference**

As will be explained below, Aqua does not challenge the PTO's regulations

per se.   Rather, it is the PTO's interpretation of those regulations—as first

announced in *Idle Free Systems, Inc. v. Bergstrom, Inc.*, No. IPR2012-00027, 2013

WL 5947697 (PTAB June 11, 2013)—that runs contrary to the plain language of

the IPR statute.  *See NLRB v. Brown*, 380 U.S. 278, 291 (1965) ("Reviewing courts

are not obliged to stand aside and rubberstamp their affirmance of administrative

decisions that they deem inconsistent with a statutory mandate or that frustrate the

congressional policy underlying a statute.").   In *Idle Free*, an "expanded" six-

member panel of the Board provided what it called "a general discussion of several

important requirements for a patent owner's motion to amend claims."  2013 WL

5947697, at *1.  A threshold question here is whether this "general discussion" in

*Idle Free* is entitled to any deference and, if so, what level of deference.

This Court has held that PTO regulations concerning "the conduct of

attorneys 'before the Office'" may be entitled to *Chevron* deference.  *See, e.g.*,

*Bender v. Dudas*, 490 F.3d 1361, 1368 (Fed. Cir. 2007).  That does not mean,

however, that a Board decision's subsequent gloss on those regulations is also entitled to *Chevron* deference.  Indeed, in *Proxyconn*, this Court reviewed the Board's interpretation in *Idle Free* not under *Chevron* but under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *Proxyconn*, 789 F.3d at 1306 (citing *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004)).  Under that standard, the Court must "set aside actions of the Board that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and set aside factual findings that are unsupported by substantial evidence."  *Sullivan*, 362 F.3d at 1326.  In addition, the Court must "accept the Board's interpretation of Patent and Trademark Office regulations unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'"  *Id.* (quoting *Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1266 (Fed. Cir. 2003)).

No additional deference beyond that afforded to any Board decision under the APA is warranted here, particularly given that the Board's interpretation in *Idle Free* was not promulgated via notice-and-comment rulemaking.  The Board has designated its *Idle Free* decision merely as "informative," which means it is "not binding authority" and instead is meant only to provide, inter alia, "guidance on Board rules and practices."[5]  *See* Patent Trial and Appeal Board, *Standard*

---

[5] Indeed, the Board has already substantially modified certain aspects of its nonbinding *Idle Free* decision.  *See, e.g.*, *MasterImage 3D, Inc. v. RealD Inc.*, No. IPR2015-00040, 2015 WL 4383224 (PTAB July 15, 2015).

*Operating   Procedure   2   (Revision   9)*,   at   3   (¶   IV.A-B), http://www.uspto.gov/sites/default/files/documents/sop2-revision-9-dated-9-22-2014.pdf.   In similar circumstances, the Supreme Court has declined to afford *Chevron* deference to nonbinding, informal agency decisions.  *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (collecting cases).

Even if this Court were inclined to analyze the Board's interpretation in *Idle Free* under the *Chevron* framework, the first step of *Chevron* would conclusively show that the Board's interpretation warrants no deference.  Under the first step of *Chevron*, the Court must determine "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.  But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Here, with respect to the question of whether a petitioner bears the burden of proving that a proposed amended claim is unpatentable, § 316(e) speaks directly and unambiguously to this issue.  As explained above, § 316(e) clearly establishes that, "[i]n an inter partes review instituted under this chapter, the *petitioner shall* have the burden of proving a proposition of unpatentability by a preponderance of

the evidence." 35 U.S.C. § 316(e) (emphasis added). There is no "gap" in this provision for the PTO to fill. *See Chevron*, 467 U.S. at 843. Rather, the language is straightforward and comprehensive—*any* "proposition of unpatentability" that arises in an IPR, regardless of the type of claim to which it pertains or the timing of when it arises, must be proven by the *petitioner* by a preponderance of the evidence. Because there is no gap or ambiguity in this statutory provision, *Chevron* deference does not apply.

In the end, whichever framework this Court applies in reviewing the Board's interpretation stemming from *Idle Free*, it will reach the same conclusion—that the Board's interpretation is erroneous and entitled to no deference because it conflicts with the statute. *See PhotoCure ASA v. Kappos*, 603 F.3d 1372, 1376 (Fed. Cir. 2010) ("Even if some level of deference were owed to the PTO's interpretation, neither *Chevron* nor *Skidmore* permits a court to defer to an incorrect agency interpretation." (citing *Eldredge v. Dep't of the Interior*, 451 F.3d 1337, 1343 (Fed. Cir. 2006) (declining to defer to the agency's "counterintuitive reading of the statute"))); *Smith v. City of Jackson*, 544 U.S. 228, 267 (2005) ("[I]t is elementary that 'no deference is due to agency interpretations at odds with the plain language of the statute itself.'" (quoting *Pub. Emps. Ret. Sys. v. Betts*, 492 U.S. 158, 171 (1989))).

28

> **b.    The PTO's Rules Do Not Require Patent Owners to Bear the Burden of Proving That Proposed Amended Claims Are Patentable**

The Board's justification for placing the burden of proof on the patent owner to show that proposed amended claims are patentable is based on its retroactive interpretation of two PTO rules.  The Panel in this case succinctly summarized the PTO's rationale as follows:

> Pursuant to the statutory framework, the Patent and Trademark Office ("PTO") promulgated 37 C.F.R. § 42.121, which allows the Board to deny a motion to amend if the amendment expands the claim scope or "does not respond to a ground of unpatentability involved in the trial."  Because PTO regulations place the burden for any motion on the movant, *see* 37 C.F.R. § 42.20(c), the Board has interpreted § 42.121 as placing the burden on the patentee to show that the proposed amendments would make the claims patentable over the known prior art.

*In re: Aqua Prods.*, 823 F.3d at 1373 (citing *Idle Free*, 2013 WL 5947697).

Contrary to the Board's rationale, however, neither of these rules require patent owners to bear the burden of showing that proposed amended claims are patentable—nor *could* they given the contrary mandate of § 316(e) that "*petitioner[s]* shall have the burden of proving a proposition of unpatentability . . . ."  35 U.S.C. § 316(e) (emphasis added).

Section 42.20 is a general provision that establishes procedures for motions before the Board.  37 C.F.R. § 42.20.  Contrary to the Board's interpretation, this

provision does not require that patent owners bear the burden of proving that proposed amended claims are patentable. Instead, it merely states that "[t]he moving party has the burden of proof to establish that it is entitled to the requested relief." 37 C.F.R. § 42.20(c). When a patent owner files a motion to amend claims during an IPR, the "requested relief" pursuant to the statute is for the patent owner to be allowed to "*propose* a reasonable number of substitute claims." 35 U.S.C. § 316(d)(1)(B) (emphasis added). To be entitled to this relief, the patent owner must first establish that the amendments do "not enlarge the scope of the claims of the patent or introduce new matter." 35 U.S.C. § 316(d)(3). As the movant, the patent owner has the burden to establish these two statutory requirements. Once that burden is met, however, the Board should grant the requested relief by bringing the proposed substitute claims into the proceeding and allowing the petitioner an opportunity to prove that they are unpatentable.

Thus, in an IPR, when the Board grants a patent owner's motion to amend, the proposed amended claims are not automatically allowed or listed in a published certificate. Instead, the proposed amended claims are *added to the IPR*, which then subjects those claims to the same standards, burdens, and procedures that are applicable to all other claims in the IPR. Among these is the petitioner's burden to prove any "proposition of unpatentability" against the proposed amended claims. Only when these procedures have been completed can the Board finally determine

30

whether the proposed amended claims should be included in a published certificate pursuant to 35 U.S.C. § 318(b).

The PTO's own explanation of its rule changes confirms this point:

> [T]he first motion to amend need not be authorized by the Board.  If the motion complies with the timing and procedural requirements, the motion would be entered.  Additional motions to amend would require prior Board authorization. *All motions to amend, even if entered, will not result automatically in entry of the proposed amendment into the patent.*

*Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680, 48,692 (Aug. 14, 2012) (emphasis added).  So, when a patent owner files a motion to amend claims during an IPR, it does bear a "burden of proof to establish that it is entitled to the requested relief."  37 C.F.R. § 42.20(c).  But the "requested relief" is merely to have the proposed amended claims added to the IPR, and the burden is only to prove that the amendments are nonbroadening and add no new matter.  35 U.S.C. § 316(d)(3).  Once this relief is granted, it falls on the petitioner to raise any propositions of unpatentability with respect to the proposed amended claims and prove those propositions by a preponderance of the evidence.  35 U.S.C. § 316(e).

Turning to the other rule that the Board relied upon, 37 C.F.R. § 42.121(a)(2), this provision establishes grounds for denying a motion to amend,

but it does *not* place a burden of persuasion on the patent owner to prove that proposed amended claims are patentable.  Instead, this section merely requires that a motion to amend "*respond* to a ground of unpatentability involved in the trial." 37 C.F.R. § 42.121(a)(2)(i) (emphasis added).  This means the patent owner must show that its proposed amendment is *responsive* (i.e., relevant) to at least one ground of unpatentability at issue in the IPR.  For example, a patent owner cannot use the amendment process to fix defects in the claims arising solely under 35 U.S.C. § 101 or § 112, since those are not grounds of unpatentability that can be considered in an IPR.  The requirement to "respond to a ground of unpatentability involved in the trial" is thus akin to a burden of production, requiring the patent owner to come forward with sufficient evidence or an argument to show that the proposed amendments are not being offered for an improper purpose.  This threshold showing is not the same as having to carry the ultimate burden of *persuasion* on patentability, which the statute expressly assigns to the petitioner.

In fact, § 42.121(a)(2)(i) does not even require a comprehensive response to *all* grounds asserted against a particular claim; it only requires responding to "*a* [i.e., one] ground of unpatentability involved in the trial."  37 C.F.R. § 42.121(a)(2)(i) (emphasis added).  If the PTO had truly wanted to place the burden on patent owners to prove the patentability of substitute claims, it would have drafted § 42.121(a)(2)(i) to require patent owners to "respond to (and

overcome) *all* grounds of unpatentability involved in the trial." But, of course, this would have been flatly contrary to 35 U.S.C. § 316(e), which places the opposite burden of proving a proposition of unpatentability on the petitioner.

The PTO's commentary on its new rules confirms that § 42.121(a)(2)(i) was intended merely as a streamlining measure, not a substantive rule that places the burden of persuasion on the patent owner to prove patentability:

> As the PTO explained, this rule [§ 42.121(a)(2)(i)] is meant to "enhance efficiency of review proceedings . . . . [A]ny amendment that does not respond to a ground of unpatentability most likely would cause delay, increase the complexity of the review, and place additional burdens on the petitioner and the Board."

*Proxyconn*, 789 F.3d at 1308 (second alteration in original) (quoting *Changes to Implement Inter Partes Review Proceedings*, 77 Fed. Reg. at 48,705). As this commentary explains, § 42.121(a)(2)(i) was intended to ensure that proposed amendments are not added for an extraneous purpose unrelated to any issue in the trial (e.g., to cure defects arising solely under § 101 or § 112), since this "most likely would cause delay, increase the complexity of the review, and place additional burdens on the petitioner and the Board." *Id.* (quoting *Changes to Implement Inter Partes Review Proceedings*, 77 Fed. Reg. at 48,705). This is consistent with a burden of *production* to come forward with sufficient evidence to show that a proposed amendment has a threshold degree of relevance to at least one ground of patentability at issue in the IPR. Such a burden of production does

not run afoul of the IPR statute *provided that* the ultimate burden of persuasion to show any proposition of unpatentability remains with the petitioner, as expressly required by § 316(e).

In short, the PTO's regulations can reasonably be interpreted in a manner that does not shift the burden of persuasion to patent owners to show that proposed amended claims are patentable. The Board's contrary interpretation, as first announced in *Idle Free*, must be rejected as "an abuse of discretion," "plainly erroneous," and "not in accordance with law," *Sullivan*, 362 F.3d at 1326 (citation omitted), because it flatly contradicts the unambiguous mandate of § 316(e) that "the *petitioner shall* have the burden of proving a proposition of unpatentability by a preponderance of the evidence." *See Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981) ("[Courts] must reject administrative constructions of the statute, whether reached by adjudication or by rule-making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.").

### 5. Under a Proper Interpretation of § 316(e), the PTO Will Not Be Forced to Issue "Untested" or "Unexamined" Claims

This Court has expressed concern that requiring petitioners to prove the unpatentability of substitute claims could result in untested claims issuing "despite the PTO having before it prior art that undermines patentability." *Nike*, 812 F.3d at

1333 (quoting *Proxyconn*, 789 F.3d at 1307-08). This concern is unwarranted, however, because the restrictive requirements of § 316(d) ensure that the substitute claims are no broader in scope than the claims that were considered *and allowed* during original prosecution. Because the issued claims were already examined and allowed by the PTO, and because § 316(d) requires substitute claims to be no broader in scope, these substitute claims are neither untested nor unexamined. They are simply narrower versions of the original claims that underwent a full examination on the merits.

The fact that some of these narrowed claims may never get reviewed in light of newly asserted prior art if the petitioner drops out or declines to challenge those claims is a perfectly acceptable result given that IPRs are "litigation-like contested proceedings." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 756 (Fed. Cir. 2016); *see also* H.R. Rep. No. 112-98, pt. 1, at 68 (2011) ("Specifically, the bill would: • Establish a new procedure, known as post-grant review, to review the validity of a patent . . . in a court-like proceeding in which both the challenger and the owner of the patent present information regarding the validity of a patent."). In a litigation, if a party drops an issue from the case, that party typically loses on that issue. Similarly, a substitute claim that issues from an IPR without consideration of newly asserted prior art (e.g., because the petitioner dropped the issue) is not an unjust result—it is simply a byproduct of

the litigation-based system that Congress created. Other parties will be free to challenge that claim in future IPRs, ex parte reexaminations, or district court litigations. Also, the Director of the PTO could, on her own initiative, initiate an ex parte reexamination pursuant to 37 C.F.R. § 1.520, following the IPR, if she is concerned about the patentability of the substitute claims.[6]

In fact, there are many situations where patent claims are allowed to remain in force "despite the PTO [or a district court] having before it prior art [or other information] that undermines patentability" of those claims. *Nike*, 812 F.3d at 1333 (quoting *Proxyconn*, 789 F.3d at 1307-08). For instance, when the PTO institutes an IPR, it does so based on a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). In other words, the Board institutes review when it believes one or more of the challenged claims are likely unpatentable. Yet the Board routinely grants joint requests to terminate IPRs after institution, particularly when those requests are filed early in the proceedings.[7] When the Board does so, it

---

[6] *See* PTO, *Ex Parte Reexamination Filing Data* 1 (Sept. 30, 2013), https://www.uspto.gov/patents/stats/ex_parte_historical_stats_roll_up_EOY2013.pdf (showing that the PTO initiated ex parte reexamination 167 times from when the reexamination statute went into effect in the early 1980s through September 30, 2013).

[7] *See* PTO, *Patent Trial and Appeal Board Statistics* 9 (July 31, 2016), http://www.uspto.gov/sites/default/files/documents/2016-07-31%20PTAB.pdf (showing that 189 IPRs were settled after institution in FY2015 and 163 were settled after institution in FY2016, as of July 31, 2016).

literally leaves claims intact that it believed at the time of institution were likely unpatentable. Again, there is nothing wrong with this outcome given the litigation-like nature of an IPR and the fact that other parties will be free to challenge those claims in the future. But it shows that the PTO's purported fear about potentially unpatentable claims surviving IPRs must be taken with a grain of salt. The Board routinely allows such claims to remain alive when it permits parties to settle IPRs after institution.

Similarly, consider the situation where the Board is unable to construe a key claim term because the term is indefinite. *See, e.g.*, *Blackberry Corp. v. MobileMedia Ideas, LLC*, No. IPR2013-00036, Paper 65 (PTAB Mar. 7, 2014) (denying institution because of claim indefiniteness); *Space Expl. Techs. Corp. v. Blue Origin LLC*, No. IPR2014-01378, Paper 6 (PTAB Mar. 3, 2015) (same). In these instances, the Board typically denies institution, leaving these claims intact despite the Board's apparent belief that they are invalid under § 112. Granted, the Board has no other choice because the IPR statute precludes consideration of invalidity grounds arising under § 112. *See* 35 U.S.C. § 311(b). But, by the same token, the statute *also* precludes the Board from shifting the burden of proof to the patent owner to prove that proposed amended claims are patentable. *See* 35 U.S.C. § 316(e). In other words, in both instances, the Board is constrained by the statute

to allow some claims to "live to fight another day," even if it may have doubts about the patentability of those claims.

And, of course, in district court litigations, parties often settle after the accused infringer presents a strong invalidity defense, and courts routinely allow such settlements despite doubts about the validity of the claims at issue.  Indeed, even after a *ruling* of invalidity in a district court litigation, it is possible for the parties to successfully request that the ruling be vacated pursuant to a private settlement.  *See Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826, slip op. at 1-2 (N.D. Cal. Dec. 21, 2015) (granting motion to vacate judgment of invalidity); *Hospira, Inc. v. Sandoz Inc.*, Civ. A. No. 09-4591 (MLC), 2014 WL 794589, at *5 (D.N.J. Feb. 27, 2014) (same); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2014 WL 524661, at *2 (D. Kan. Feb. 10, 2014) (same). *But see Cardpool, Inc. v. Plastic Jungle, Inc.*, 817 F.3d 1316, 1324 (Fed. Cir. 2016) (affirming denial of motion to vacate judgment of invalidity).

Thus, there is nothing unusual or particularly problematic about allowing some amended claims (which, again, are simply narrower versions of already examined and allowed claims)—in relatively rare situations where the petitioner drops out or chooses not to challenge those claims—to be included in a published certificate without being reviewed in light of newly asserted prior art.  This is no different than what routinely happens in the situations described above.

Nor is it unfair to require petitioners to carry the burden of showing that proposed substitute claims are unpatentable.  After all, it is the petitioner, not the patentee, who invokes the burden-of-proof standard in § 316(e) by filing its IPR petition, thereby agreeing to prove *any* "proposition of unpatentability."  The petitioner knows that if an IPR is instituted, the patent owner will have a statutory right to file one motion to amend, seeking to add a reasonable number of proposed substitute claims to the proceeding.  Section 316(d) prescribes what the patent owner must prove to successfully inject proposed substitute claims into the proceeding—i.e., that the proposed amendment does not introduce new subject matter or expand the scope of the claims.  If the patent owner meets those requirements, the *petitioner* must then prove unpatentability of the proposed substitute claims under § 316(e).  This is not an unfair result since the petitioner accepted § 316(e)'s burden to prove *any* "proposition of unpatentability" when it filed its petition.

Finally, regardless of the merits of the PTO's alleged concern about potentially untested claims issuing via § 316(d)'s amendment process, that policy concern cannot justify ignoring the clear statutory mandate of § 316(e) that "the petitioner *shall* have the burden of proving a proposition of unpatentability."  *See Artuz v. Bennett*, 531 U.S. 4, 10 (2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to

accommodate them."); *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."); *Bankamerica Corp. v. United States*, 462 U.S. 122, 140 (1983) ("[W]e are not to rewrite the statute based on our notions of appropriate policy.").

### 6. The PTO's Interpretation of the Statute Leads to Undesirable Results

#### a. The PTO's Interpretation Places a Negative Burden on Patent Owners

The concept of placing a burden on a patentee to prove that a proposed claim is patentable (i.e., not unpatentable) finds no precedent elsewhere in this Court's jurisprudence. *Cf. Rambus Inc. v. Rea*, 731 F.3d 1248, 1255 (Fed. Cir. 2013) ("The Board erroneously placed the burden on [the patentee] to prove that its claims were not obvious. In reexamination proceedings, 'a preponderance of the evidence must show nonpatentability before the PTO may reject the claims of a patent application.'" (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988))); *Velander v. Garner*, 348 F.3d 1359, 1369-70 (Fed. Cir. 2003) (requiring the party challenging validity in an interference proceeding to "establish by a preponderance of the evidence that the claims of the . . . application were unpatentable").

In practice, shifting the burden to the patentee to prove patentability of substitute claims creates unjust results by forcing the patentee to address numerous prior art references and attempt to negate every conceivable invalidity theory—all within a relatively short page limit.[8]  The Supreme Court has cautioned against legal standards that create these types of negative burdens.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 850 (2014) (refusing to place the burden on accused infringer to show noninfringement after reasoning that doing so could result in the accused infringer having to "work in the dark . . . to negate every conceivable infringement theory").

### b. The PTO's Interpretation Upsets the Balance That Congress Struck Between the Rights of Patent Owners and Petitioners

The PTO's requirement that a patentee must prove the patentability of proposed substitute claims unduly restricts the amendment option that Congress intentionally granted in § 316(d).  Indeed, as of April 30, 2016, the Board had granted only *six* of 118 motions to amend, representing a 95% failure rate.[9]  Clearly, this was not Congress's intent.

---

[8] During the PTO proceedings in this case, Aqua was allowed only fifteen pages in which to satisfy this nearly impossible burden. *See* Gray Br. 12-13.  The rule has since been amended to allow patent owners twenty-five pages in a motion to amend. 37 C.F.R. § 42.24(a)(1)(vi).

[9] PTO, *Patent Trial and Appeal Board Motion to Amend Study* 4 (Apr. 30, 2016), https://www.uspto.gov/sites/default/files/documents/2016-04-30%20PTAB%20MTA%20study.pdf.

"The opportunity to amend is an important part of the balance struck in the AIA." *Synopsys*, 814 F.3d at 1326 (Newman, J., dissenting); *see also id.* at 1326-27, 1341-42 (discussing the "extensive policy balances in the AIA as eventually enacted"). Under the procedure that Congress carefully crafted, an amendment that comports with § 316(d) by adding no new matter and being no broader in scope than the original claims should be added to the IPR as a matter of course. Then, throughout the rest of the proceedings, the petitioner can try to satisfy its burden under § 316(e) of proving that the substitute claims are unpatentable. This is the scheme that Congress created—and neither this Court nor the PTO has the power to modify that scheme for want of a different policy outcome. *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014) ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.").

### c.    The PTO's Interpretation Results in an Incomplete Record That Is Difficult to Review on Appeal

For decades, this Court has reviewed records from district courts, the International Trade Commission, the Court of Federal Claims, and the PTO, in which assertions of anticipation or obviousness were litigated below and appealed to this Court. In so doing, this Court—like its predecessors—has consistently held that a proper anticipation or obviousness analysis must consider *all* the limitations of a claim, i.e., the invention "as a whole." *See, e.g.*, *In re Paulsen*, 30 F.3d 1475,

1478-79 (Fed. Cir. 1994) ("A rejection for anticipation under section 102 requires that each and every limitation of the claimed invention be disclosed in a single prior art reference."); *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 724 (Fed. Cir. 1990) ("Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness."); *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008) ("The determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim."). Accordingly, the Court has remanded decisions on anticipation and obviousness that failed to analyze each limitation of a challenged claim. *See, e.g.*, *In re Thrift*, 298 F.3d 1357, 1366 (Fed. Cir. 2002) (vacating and remanding an obviousness determination because the Board failed to individually "discuss the unique limitations" of the claim, rendering the analysis "simply inadequate on its face").

Yet in a sharp break with this Court's jurisprudence, the PTO now seeks to task patent owners with proving that proposed amended claims are "patentable," i.e., not unpatentable. Aside from being facially inconsistent with the statutory mandate of § 316(e), this new regime also results in an incomplete record that is difficult to review on appeal. Because a patent owner can attempt to disprove unpatentability by focusing on just a single claim limitation or a subset of limitations, the petitioner can likewise limit its response to just those specific

43

limitations raised by the patent owner. As a result, the Board can find a proposed amended claim "unpatentable" even though *no party* ever establishes a prima facie case of unpatentability, i.e., a showing that each limitation is found in a single prior art reference or that the invention as a whole is obvious, which requires considering all elements of the claim. Indeed, that is precisely what happened here. *See* Blue Br. 44-46; Gray Br. 13-21.

Under the PTO's awkward and unprecedented practice of placing a negative burden on the patent owner to *disprove* unpatentability, this Court is then tasked with reviewing determinations of "unpatentability"—as in this case—that are devoid of any specific finding that each claim limitation is present in the prior art (for anticipation) or that the claim as a whole is obvious. This not only conflicts with this Court's long-standing validity jurisprudence, it also runs afoul of the record-making requirements of the APA. *See In re Sang-Su Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) (vacating and remanding Board decision for failing to comply with the APA, stating that "[t]he board cannot rely on conclusory statements when dealing with particular combinations of prior art and specific claims, but must set forth the rationale on which it relies").

**B.    Aqua's Response to Question No. 2 of the En Banc Order**

**1.    The Board Does Not Have the Authority to Sua Sponte Raise, Address, and Decide Patentability Theories in an IPR**

In its en banc order, this Court inquired whether the Board can sua sponte raise patentability challenges to a proposed amended claim if the petitioner fails to do so, or does so inadequately.  Aqua believes this Court has already answered this question in its precedential decision in *Magnum*.  2016 WL 3974202, at *10.  In *Magnum*, the Board issued a final decision in an IPR canceling certain claims as obvious over a combination of references that the petitioner itself never asserted, and for which neither the petitioner nor the Board "ever established a *prima facie* basis for the rejection."  *Id.* at *5 (citation omitted).  This Court held as follows:

> Finally, we address the PTO's assertion that the Board did not err in making an obviousness argument on behalf of [the petitioner] based on the primary reference Lehr because this argument "could have been included in a properly-drafted petition." . . . It is true that the entire IPR process is one designed as an "efficient system for challenging patents that should not have issued." *Cuozzo Speed Techs.*, 136 S.Ct. 2131 (quoting H.R. Rep. No. 112-98, pt. 1, at 39-40 (2011)). But it is still a system that is predicated on a petition followed by a trial in which the petitioner bears the burden of proof.  Given that framework, we find no support for the PTO's position that the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR.  Instead, the Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond. *SAS Inst., Inc. v. ComplementSoft, LLC*, No. 2015-1347, 2016 U.S. App. LEXIS 10508, at

> *20–21 (Fed. Cir. June 10, 2016) ("An agency may not
> change theories in midstream without giving respondents
> reasonable notice of the change and the opportunity to
> present argument under the new theory.") (interpreting
> 5 U.S.C. § 554(b)(3)) (quoting *Belden Inc. v. Berk-Tek
> LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015) (internal
> quotations omitted)). . . . Thus, while the PTO has broad
> authority to establish procedures for revisiting earlier-
> granted patents in IPRs, that authority is not so broad that
> it allows the PTO to raise, address, and decide
> unpatentability theories . . . .

*Id.* at *10 (citations omitted).

The Court's decision in *Magnum* was based on the clear language of § 316(e), which places the burden of proving unpatentability on the petitioner in an IPR. Although the claims at issue in *Magnum* were original claims rather than proposed amended claims, it is Aqua's belief that § 316(e) applies equally to both types of claims, as explained above. Thus, if this Court agrees that § 316(e) applies equally to both proposed amended claims and original claims, then the rationale of *Magnum* should likewise apply with equal force. Aqua therefore submits that the answer to the Court's second en banc question is no.

## 2. Even If the Board Could Sua Sponte Raise a Proposition of Unpatentability, It Cannot Shift the Burden to the Patent Owner or Deprive It of an Opportunity to Respond

An IPR is a "litigation-like contested proceeding[]" in which the Board serves an adjudicative function. *PPC Broadband*, 815 F.3d at 756. As this Court explained in *Genzyme*:

> The development of evidence in the course of the trial is in keeping with the oppositional nature of an *inter partes* review proceeding. "The parties present their evidence up front, the patent owner offers any amendments, and the PTO simply decides whether the challenger has met his burden of proving invalidity." S. Rep. No. 111–18, at 57 (2009) (views of Sens. Kyl, Feingold, and Coburn). The purpose of the trial in an *inter partes* review proceeding is to give the parties an opportunity to build a record by introducing evidence— not simply to weigh evidence of which the Board is already aware.

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016); *see also* 154 Cong. Rec. S9982, S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl) ("Under an oppositional system, by contrast, the burden is always on the petitioner to show that a claim is not patentable. Both parties present their evidence to the PTO, which then simply decides whether petitioner has met his burden.").

Given the litigation-like nature of an IPR and the adjudicatory function of the Board, it follows that the Board may not, under any circumstances, require a party to prove something that it does not actually have the burden to prove. Thus, even if this Court were to conclude that the Board could sua sponte raise patentability challenges to a proposed amended claim (e.g., if the petitioner fails to do so), the Board could not simply raise this challenge and then require the patent owner to disprove it, as this would contravene the burden-of-proof requirement of § 316(e). Indeed, even if the Board were to set forth a "prima facie case of

47

unpatentability," it *still* would be improper to shift the burden to the patent owner to rebut it. As this Court explained in *Magnum*:

> "In an *inter partes* review, the burden of persuasion is on the petitioner to prove 'unpatentability by a preponderance of the evidence,' 35 U.S.C. § 316(e), and that burden never shifts to the patentee." *Dynamic Drinkware*[*,LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015)]. Indeed, "the Supreme Court has never imposed nor even contemplated a formal burden-shifting framework in the patent litigation context." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012) (reversing district court's determination of obviousness because "the court imposed a burden-shifting framework in a context in which none exists"). We have noted that "a burden-shifting framework makes sense in the prosecution context," where "[t]he prima facie case furnishes a 'procedural tool of patent examination, allocating the burdens of going forward as between examiner and applicant.'" *Id.* at 1080 n. 7 (citing *In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992)). As the PTO concedes, however, that burden-shifting framework does not apply in the adjudicatory context of an IPR. Intervenor Br. at 30 (citing *In re Jung*, 637 F.3d 1356, 1362 (Fed. Cir. 2011) (holding the *prima facie* case during patent examination "is merely a procedural device that enables an appropriate shift of the burden of production" from the PTO to the patent applicant)).

*Magnum*, 2016 WL 3974202, at *6 (alteration in original).

Moreover, IPR proceedings are "formal administrative adjudications subject to the procedural requirements of the Administrative Procedure Act ('APA')." *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016)

(citing *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1298 (Fed. Cir. 2016); *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015); *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999)). One such APA provision is that "[p]ersons entitled to notice of an agency hearing shall be timely informed of . . . the matters of fact and law asserted." 5 U.S.C. § 554(b)(3). This protection applies to both petitioners and patent owners. *ComplementSoft*, 825 F.3d at 1351. In the context of IPR proceedings, this Court has interpreted § 554(b)(3) of the APA to require that the parties be given notice of any new agency theory and "the opportunity to present argument under the new theory." *Belden*, 805 F.3d at 1080 (quoting *Rodale Press, Inc. v. FTC*, 407 F.2d 1252, 1256-57 (D.C. Cir. 1968)); *see also Dell*, 818 F.3d at 1300-01 (holding that the Board, in relying on factual assertions the petitioner introduced for the first time at the oral hearing, violated § 554(b)(3) because the patent owner did not have a meaningful opportunity to respond).

Accordingly, even if this Court were to conclude that the Board can sua sponte raise patentability challenges to a proposed amended claim and shift the burden to the patent owner using a "prima facie" framework, the Board would still be required—at a minimum—to provide the patent owner with notice of the patentability challenge and a meaningful opportunity to respond. *Belden*, 805 F.3d at 1080; *Dell*, 818 F.3d at 1300-01. The Board cannot simply step in the shoes of the petitioner, make arguments and findings against patentability, and issue an

order rejecting the amended claim, all in one fell swoop. *See ComplementSoft*, 825 F.3d at 1351.

### C.    Under the Proper Interpretation of the IPR Statute, a Remand Is Necessary in This Case

In the IPR proceedings below, the petitioner failed to establish by a preponderance of the evidence that substitute claims 22-24 are unpatentable. *See* Blue Br. 44-46; Gray Br. 13-21.  That is, the petitioner never showed that a single prior art reference anticipated these claims, or that any of these claims, when considered as a whole, would have been obvious over the cited prior part.  Blue Br. 44-46; Gray Br. 13-21.  Accordingly, if this Court agrees with Aqua's interpretation of the IPR statute, at least a remand is required so that the Board can perform the correct analysis under the proper burden of proof.  Moreover, since the petitioner has withdrawn, leaving no party to challenge the patentability of the substitute claims, the remand should come with instructions to include claims 22-24 in a published certificate under 35 U.S.C. § 318(b).

## V.    CONCLUSION

For the reasons explained above, this Court should reverse the Board's interpretation of 35 U.S.C. § 316(e) and make clear that this provision requires petitioners to prove unpatentability by a preponderance of the evidence for any proposed amended claim that satisfies the statutory requirements of 35 U.S.C. § 316(d)(3).  The Court should also remand this case to the Board with instructions

to include substitute claims 22-24 in a published certificate pursuant to 35 U.S.C.

§ 318(b).


Date: September 26, 2016          Respectfully submitted,


                                   /s/ James R. Barney
                                  James R. Barney
                                  Timothy P. McAnulty
                                  David K. Mroz
                                  FINNEGAN, HENDERSON, FARABOW,
                                    GARRETT & DUNNER, LLP
                                  901 New York Avenue, NW
                                  Washington, DC 20001-4413
                                  (202) 408-4000

                                  *Attorneys for Appellant*
                                  *Aqua Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 26, 2016, this SUPPLEMENTAL BRIEF FOR

APPELLANT AQUA PRODUCTS, INC. ON REHEARING EN BANC was filed

electronically using the CM/ECF system and served via the CM/ECF system on

counsel for the U.S. Patent and Trademark Office, as follows:

> Nathan K. Kelley
> Farheena Rasheed
> Meredith Schoenfeld
> Scott C. Weidenfeller
> United States Patent and Trademark Office
> Office of the Solicitor
> P.O. Box 1450, Mail Stop 8
> Alexandria, VA 22313

> /s/ David K. Mroz
> Finnegan, Henderson, Farabow,
>  Garrett & Dunner, LLP

## CERTIFICATE OF COMPLIANCE

I certify that this SUPPLEMENTAL BRIEF FOR APPELLANT AQUA PRODUCTS, INC. ON REHEARING EN BANC contains 12,472 words as measured by the word-processing software used to prepare this brief.


  /s/ James R. Barney