# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

## 2015-1177

_____

IN RE: AQUA PRODUCTS, INC.,

*Appellant*.

_____

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
Case No. IPR2013-00159

_____

**[CORRECTED] EN BANC BRIEF OF THE INTERNET ASSOCIATION, THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, DELL, GARMIN, INTEL, RED HAT, SAMSUNG, SAP AMERICA, SAS INSTITUTE, THE SOFTWARE & INFORMATION INDUSTRY ASSOCIATION, SYMMETRY, AND VIZIO AS *AMICI CURIAE* IN SUPPORT OF INTERVENOR**

_____

MATTHEW J. HULT
INTEL CORPORATION
2200 Mission College Blvd.
Santa Clara, California 95054
(415) 378-4064

JOHN THORNE
JOSHUA D. BRANSON
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Amici Curiae*

November 3, 2016

# CERTIFICATE OF INTEREST

Counsel for *amici curiae* certify the following:

1.    The full names of every *amicus* represented by me are:  The Internet Association; The Computer & Communications Industry Association; Dell Inc.; Garmin International Inc.; Intel Corp.; Red Hat, Inc.; Samsung Electronics Co., Ltd.; SAP America, Inc.; SAS Institute, Inc.; The Software & Information Industry Association; Symmetry, LLC; and VIZIO, Inc.

2.    I do not represent any real party in interest.

3.    Denali Intermediate Inc. is the direct parent company of *amicus* Dell Inc.  No other publicly held company owns 10% or more of Dell Inc. or Denali Intermediate Inc.  Garmin, Ltd. is the parent company of *amicus* Garmin International Inc.  No other publicly held company owns 10% or more of Garmin International Inc. or Garmin, Ltd.  *Amicus* SAP America, Inc. is wholly owned by SAP SE.  No other publicly held company owns 10% or more of SAP America, Inc. or SAP SE.  No other *amicus* has a parent corporation or publicly held company that owns 10% or more of its stock.

4.    The names of all law firms and the partners or associates that appeared for *amici* now represented by me are:

John Thorne
Joshua D. Branson
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

Matthew J. Hult
INTEL CORPORATION
2200 Mission College Blvd.
Santa Clara, California 95054
(415) 378-4064

|  |  |
|---|---|
| | /s/ *John Thorne* |
| Dated:  November 3, 2016 | John Thorne |
| | *Counsel for Amici Curiae* |

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................i

TABLE OF AUTHORITIES .................................................................v

STATEMENT OF INTEREST..............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT ...................................................................................5

I.     THE BOARD REASONABLY REQUIRES PATENT
OWNERS TO BEAR THE BURDEN OF PERSUASION
IN PROVING THE PATENTABILITY OF A PROPOSED
AMENDED CLAIM ............................................................5

     A.     The Board Reasonably Interprets Its Regulations
To Place The Burden Of Persuasion On The Patent
Owner ....................................................................5

          1.     The Board's approach reflects a permissible
reading of its regulations ...................................5

          2.     The Board's approach is consistent with
§ 316(e) .........................................................8

     B.     The Board's Interpretation Promotes Congress's
Purpose Of Improving Patent Quality ......................13

          1.     Placing the burden of persuasion on the
patent owner helps to eliminate weak claims ................13

          2.     Placing the burden of persuasion on the patent
owner helps prevent untested claims from
issuing .........................................................16

          3.     The criticisms of the Board's approach are
overblown ......................................................20

II.    THE BOARD MAY SUA SPONTE RAISE
       PATENTABILITY CHALLENGES TO A
       PROPOSED AMENDED CLAIM ....................................................25

CONCLUSION ......................................................................................29

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page

## CASES

*Barton v. Adang*, 162 F.3d 1140 (Fed. Cir. 1998) ....................................................7

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016) .............16, 17, 18, 23, 26

*Eli Lilly & Co. v. Board of Regents of Univ. of Washington*,
    334 F.3d 1264 (Fed. Cir. 2003) ..................................................................6, 8

*Florida Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33
    (2008) ........................................................................................................10

*Magnum Oil Tools Int'l, Ltd., In re*, 829 F.3d 1364 (Fed. Cir. 2016) .........26, 27, 28

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) .......................................6, 10

*Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292 (Fed. Cir. 2015) ......5, 6, 7, 8, 14,
    17, 26, 28, 29

*Morris, In re*, 127 F.3d 1048 (Fed. Cir. 1997).........................................................15

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014)....................15, 20

*Nike, Inc. v. Adidas AG*, 812 F.3d 1326 (Fed. Cir. 2016) ...............................5, 11, 15

*Prolitec, Inc. v. ScentAir Techs., Inc.*, 807 F.3d 1353 (Fed. Cir. 2015) ...............5, 28

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005) ............................................6

*Swanson, In re*, 540 F.3d 1368 (Fed. Cir. 2008).....................................................12

*Veritas Techs. LLC v. Veeam Software Corp.*, --- F.3d ----,
    2016 WL 4525278 (Fed. Cir. Aug. 30, 2016) ........................................25, 29

*Weiler, In re*, 790 F.2d 1576 (Fed. Cir. 1986) ........................................................24

## ADMINISTRATIVE DECISIONS

*BioDelivery Sciences Int'l, Inc. v. MonoSol Rx, LLC*, Case IPR2013-
    00315, 2013 WL 8563948 (PTAB Nov. 13, 2013) ......................................19

*HTC Corp. v. Advanced Audio Devices, LLC*, Case IPR2014-01154,
    2015 WL 9488115 (PTAB Dec. 29, 2015)....................................................22

*Idle Free Sys., Inc. v. Bergstrom, Inc.*, Case IPR2012-00027,
    2013 WL 5947697 (PTAB June 11, 2013)....................................5, 6, 20, 22

*Zhongshan Broad Ocean Motor Co. v. Nidec Motor Corp.*,
    Case IPR2014-01121 (PTAB May 9, 2016) (Paper 86),
    https://e-foia.uspto.gov/Foia/RetrievePdf?system=PRPS&
    flNm=IPR2014-01121_86 ............................................................................22

## STATUTES AND REGULATIONS

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, 701 *et seq.* ............4, 25, 28

    5 U.S.C. § 554(b)(3) .........................................................................28

    5 U.S.C. § 706(2)(A) ........................................................................25

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
    (2011)..........................................................................................*passim*

Patent Act (35 U.S.C.):

    35 U.S.C. § 251................................................................................23

    35 U.S.C. § 251(a) ...........................................................................23

    35 U.S.C. § 282................................................................................10

    35 U.S.C. § 282(a) ...........................................................................15

    35 U.S.C. § 303(a) ...........................................................................28

    35 U.S.C. § 311(b)........................................................................9, 11

    35 U.S.C. § 312................................................................................18

35 U.S.C. § 314(a) ...................................................3, 14, 15, 19, 21

35 U.S.C. § 315(b) ...................................................................19

35 U.S.C. § 315(e) ...................................................................20

35 U.S.C. § 316.................................................................11, 13

35 U.S.C. § 316(a)(4)..........................................................2, 11

35 U.S.C. § 316(a)(9)..........................................................9, 12

35 U.S.C. § 316(a)(11)...............................................................19

35 U.S.C. § 316(b)...........................................................2, 3, 16

35 U.S.C. § 316(d) ...................................................................12

35 U.S.C. § 316(d)(1) ...............................................................12

35 U.S.C. § 316(e) ...................................... 3, 8, 9, 10, 11, 12, 13, 27

35 U.S.C. § 318(a) ..............................................................10, 11

35 U.S.C. § 318(b).........................................................9, 10, 11

35 U.S.C. § 318(c).............................................................9, 10

37 C.F.R.:

§ 42.20.......................................................................6, 7, 8, 13

§ 42.20(a) .................................................................................6

§ 42.20(c) ..........................................................................2, 3, 6

§ 42.24(a)(1)(vi).......................................................................21

§ 42.24(a)(2) ...........................................................................21

§ 42.121...............................................................................7, 8

§ 42.121(a)..........................................................................6, 19

§ 42.121(a)(2) ...........................................................................7

§ 42.121(a)(2)(i)....................................................................7, 8

## LEGISLATIVE MATERIALS

157 Cong. Rec.:

  H4495 (daily ed. June 23, 2011)....................................................................14

  S5409 (daily ed. Sept. 8, 2011) ...................................................................14

H.R. Rep. No. 112-98, pt. 1 (2011)..................................................2, 13, 14, 18, 23

## ADMINISTRATIVE MATERIALS

77 Fed. Reg. 48,680 (Aug. 14, 2012) .................................................................8, 10

U.S. Patent & Trademark Office:

  *Patent Trial and Appeal Board Motion to Amend Study* (Apr. 30, 2016), https://www.uspto.gov/sites/default/files/documents/ 2016-04-30%20PTAB%20MTA%20study.pdf ......................................23, 24

  *Performance and Accountability Report for FY2015*, https://www.uspto.gov/sites/default/files/documents/ USPTOFY15PAR.pdf .....................................................................................24

## OTHER MATERIALS

Am. Intell. Prop. L. Ass'n, *2015 Report of the Economic Survey* (June 2015), http://files.ctctcdn.com/e79ee274201/b6ced6c3- d1ee-4ee7-9873-352dbe08d8fd.pdf .................................................................. 20

## STATEMENT OF INTEREST[1]

*Amici* are leading trade associations and technology companies that use and sell high-tech products.  We represent trillions of dollars of market capitalization and employ many of the world's most innovative computer scientists and engineers.  Most *amici* hold substantial patent portfolios and share the interest of Appellant's *amici* in high-quality patents that represent genuine additions to the public storehouse of knowledge.  But we also have a strong interest in supporting processes Congress has created – such as inter partes review – to purge poor-quality patents that function only as a private tax on public innovation.

We file this brief to support the position of the Patent Trial and Appeal Board (the "Board") on both questions presented, which furthers Congress's purpose of weeding out poor-quality patent claims.  Because we have a strong interest in preserving inter partes review as an effective way to challenge such claims, we urge the Court not to disturb the well-reasoned result reached below.

---

[1] *Amici* file this brief pursuant to the Court's order dated August 12, 2016 (Dkt. No. 60).  Counsel for *amici* authored this brief in its entirety, and none of the parties or their counsel, nor any person other than *amici* and its members, contributed money to the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The America Invents Act ("AIA" or "Act") was Congress's response to the escalating problem posed by "questionable patents [that] are too easily obtained and are too difficult to challenge."  H.R. Rep. No. 112-98, pt. 1, at 39 (2011).  Poor-quality patents pose a major problem for *amici* and other American innovators, and we agree that new statutory tools to improve patent quality were (and are) urgently needed.  The AIA created several such tools that Congress hoped would "establish a more efficient and streamlined patent system" and "limit unnecessary and counterproductive litigation costs."  *Id.* at 40.

Inter partes review represents an important part of Congress's effort to combat poor-quality patents.  It provides a relatively quick and cost-effective mechanism through which interested parties, like *amici*, can challenge and eliminate claims "that should not have issued."  *Id.* at 39-40.  Congress left many of the details surrounding that mechanism to the PTO, which it tasked with promulgating rules "establishing and governing inter partes review."  35 U.S.C. § 316(a)(4).  In doing so, Congress directed the PTO to consider the effect of its rules on "the economy" and "the integrity of the patent system."  *Id.* § 316(b).

This case concerns one such rule that the PTO promulgated in an effort to improve patent quality and combat the economic harms wrought by poor-quality claims.  Specifically, Rule 42.20(c) adopts for purposes of inter partes review the

familiar principle that the movant should bear the "burden of proof" on any motion it files.  37 C.F.R. § 42.20(c).  In accordance with the AIA's purpose of creating cost-effective ways to purge poor-quality patent claims, the Board interprets that rule as placing the burden of persuasion on a patent owner to show that any proposed substitute claims are patentable over prior art.  Appellant's (and its *amici*'s) attacks on the Board's interpretation all reduce to the same basic proposition:  that § 316(e) unambiguously requires the petitioner to bear the burden of disproving the patentability of amended claims.  As we explain below, that reading conflicts with § 316(e)'s plain language and with the statutory scheme of which it is a part.

The Board's interpretation also fulfills its mandate to protect "the integrity of the patent system."  35 U.S.C. § 316(b).  Requiring patent owners to bear the burden of persuasion regarding the patentability of proposed amended claims makes good sense.  It reflects the reality that the Board only institutes inter partes review after finding a "reasonable likelihood" that a challenged claim is unpatentable, *id*. § 314(a); it creates incentives for patent owners carefully to draft their claims in the first instance; and it avoids allowing untested amended claims to issue without receiving any critical examination.

At the same time, the Board's interpretation imposes no undue hardship on patent owners.  Although Appellant and its *amici* depict the Board's burden-of-

persuasion rule as the death knell for claim amendments, none proffers any concrete evidence to substantiate their dire assertions.  In fact, the low success rate of motions to amend actually suggests that inter partes review is operating as Congress intended:  to target and cancel especially weak patent claims.  To the extent the Board treats any patent owner unfairly in rejecting a patent owner's attempt to amend such a claim, ordinary APA review remains available to ensure that the Board's decision is not arbitrary or capricious.  That review process, rather than overhauling the burden of persuasion, offers the best way to balance patent owners' interests against Congress's goal of purging poor-quality patents.

Finally, and for essentially the same reasons, the Court should hold that the Board may sua sponte raise patentability challenges to a proposed substitute claim. A substitute claim proposed during inter partes review should not automatically be incorporated into a patent simply because the petitioner might decline to oppose it.

## ARGUMENT

**I.    THE BOARD REASONABLY REQUIRES PATENT OWNERS TO BEAR THE BURDEN OF PERSUASION IN PROVING THE PATENTABILITY OF A PROPOSED AMENDED CLAIM**

The first question posed by this Court asks whether the Board may require a patent owner in an inter partes review to bear the burden of persuasion regarding the patentability of proposed amended claims.  The Court should answer that question in the affirmative.  The Board for years has required patent owners to bear that burden, *see Idle Free Sys., Inc. v. Bergstrom, Inc.*, Case IPR2012-00027, 2013 WL 5947697, at *4 (PTAB June 11, 2013), and successive panels of this Court have consistently affirmed the Board's interpretation, *see Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1333-34 (Fed. Cir. 2016); *Prolitec, Inc. v. ScentAir Techs., Inc.*, 807 F.3d 1353, 1363-65 (Fed. Cir. 2015); *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1306-08 (Fed. Cir. 2015).  As those panels have recognized, placing the burden of persuasion on the patent owner to demonstrate the patentability of a proposed amended claim accords with the AIA's text and purpose.

**A.    The Board Reasonably Interprets Its Regulations To Place The Burden Of Persuasion On The Patent Owner**

**1.    The Board's approach reflects a permissible reading of its regulations**

The requirement that patent owners affirmatively demonstrate the patentability of a proposed amended claim reflects a permissible interpretation

of the Board's regulations. The Board's "interpretation of its own regulations is entitled to substantial deference," *Eli Lilly & Co. v. Board of Regents of Univ. of Washington*, 334 F.3d 1264, 1266 (Fed. Cir. 2003), and this Court should accept that interpretation unless "plainly erroneous or inconsistent with the regulation," *Proxyconn*, 789 F.3d at 1306. Here, the Board's requirement that patent owners bear the burden of showing "a patentable distinction of each proposed substitute claim" rests mainly on 37 C.F.R. § 42.20(c), which requires the "moving party" to "bear[] the burden to show entitlement to the relief requested." *Idle Free*, 2013 WL 5947697, at *4. Rule 42.20(c) embodies the principle – ubiquitous throughout the law – that the "burden of persuasion . . . usually falls[] upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005).

There is no serious dispute that the Board's interpretation reflects a reasonable reading of that rule. Rule 42.20 governs all "[r]elief" sought by "motion" in an inter partes review, 37 C.F.R. § 42.20(a), and a patent owner seeking to amend a patent must do so via "motion," *id*. § 42.121(a). On any such motion, the text of the rule makes clear that a "moving party has the burden of proof to establish that it is entitled to the requested relief." *Id*. § 42.20(c).[2]

---

[2] Although the term "burden of proof" in Rule 42.20(c) could reasonably be read to refer either to a "burden of persuasion" or a "burden of production," *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011), it was well within the Board's discretion to interpret that term as placing the burden of *persuasion* on the patent owner. *See id*. ("[h]ere we use 'burden of proof' interchangeably with 'burden of persuasion'").

Requiring a patent owner to bear the burden of persuasion when moving to amend a patent represents a straightforward application of Rule 42.20's plain language. *See Proxyconn*, 789 F.3d at 1307 (holding that "Board's interpretation of § 42.20(c)" is not "plainly erroneous or inconsistent with the regulation").

Rule 42.121 does not undercut the Board's interpretation. Under that rule, "[a] motion to amend may be denied" (among other reasons) if the "amendment does not respond to a ground of unpatentability involved in the trial." 37 C.F.R. § 42.121(a)(2)(i). Appellant asserts (at 32) that the term "respond to" limits the patent owner's burden to one of "production" only. But, while a patent owner may merely meet a burden of production to satisfy Rule 42.121(a)(2)(i) itself, that rule does not supply "an exhaustive list of grounds upon which the Board can deny a motion to amend." *Proxyconn*, 789 F.3d at 1306. Instead, it identifies three grounds on which a "motion to amend *may* be denied," 37 C.F.R. § 42.121(a)(2) (emphasis added), which does not foreclose the Board from exercising discretion to deny a motion on other grounds as well. *Cf. Barton v. Adang*, 162 F.3d 1140, 1144 (Fed. Cir. 1998) (finding it "clear from the use of the permissive term 'may' that the Commissioner has discretion"). Indeed, under the Board's approach, it remains true that a "motion to amend may be denied" when it "does not respond to a ground of unpatentability involved in the trial." 37 C.F.R. § 42.121(a)(2)(i). That is not "inconsistent" with the Board's view that it may *also* deny such a

motion when the patent owner fails to carry its burden of persuasion regarding the patentability of the amended claim. *Eli Lilly*, 334 F.3d at 1266.

The Board has identified sound reasons for enforcing both requirements. The burden-of-production requirement that an amended claim "respond to a ground of unpatentability involved in the trial," 37 C.F.R. § 42.121(a)(2)(i), is a procedural rule discouraging motions that threaten "delay, increase the complexity of the review, and place additional burdens on the petitioner and the Board." 77 Fed. Reg. 48,680, 48,705 (Aug. 14, 2012). The Board's burden-of-persuasion requirement, by contrast, serves the distinct substantive function of helping screen out poor-quality claims. *See* Intervenor Br. 31-35. Keeping the ultimate burden of *persuasion* with the patent owner is necessary to achieve that latter purpose. *See infra* Part I.B. Accordingly, the Board's decision to interpret Rule 42.20 as imposing a burden of persuasion on top of the procedural requirements of Rule 42.121 falls well within its wide discretion.

## 2. The Board's approach is consistent with § 316(e)

Because the Board's burden-of-persuasion requirement reflects a reasonable interpretation of the PTO's rules, this Court should accept that requirement unless it is "otherwise not in accordance with law." *Proxyconn*, 789 F.3d at 1306. Appellant's main argument (at 11-19), which its *amici* echo, is that the Board's interpretation conflicts with 35 U.S.C. § 316(e). Section 316(e) provides: "In an

inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." As the Board explains (at 13-17, 21-25), that provision does not foreclose its decision to place the burden of persuasion on a patent owner regarding the patentability of a proposed amended claim – particularly in light of Congress's specific direction that the PTO establish "standards and procedures for allowing the patent owner to move to amend the patent." 35 U.S.C. § 316(a)(9). *Amici* write to amplify the Board's analysis and emphasize the following three points.

*First*, § 316(e)'s use of the phrase "proposition of unpatentability" indicates that it governs only petitions to cancel existing claims, not motions to propose new ones. The word "unpatentability" describes what a petitioner must show with respect to *existing* claims: a petition to institute an inter partes review asks the Board to "cancel *as unpatentable* 1 or more claims" of an issued patent, *id.* § 311(b) (emphasis added), and the AIA directs the Board to "cancel[]" an existing claim "finally determined to be *unpatentable*," *id.* § 318(b) (emphasis added). But Congress used different language to describe amended claims: it directed the Board to "incorporat[e] in the patent . . . any new or amended claim *determined to be patentable*." *Id.* (emphasis added); *see id.* § 318(c) (repeating "determined to be patentable" language). The latter phrase makes clear that the patent owner bears the burden of affirmatively showing an amended claim to "be patentable." With

- 9 -

respect to such claims, a petitioner assumes no burden to demonstrate any "proposition of unpatentability" that would trigger § 316(e).[3]

Section 316(e)'s heading reinforces that distinction. *See Florida Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute."). That section is entitled "[e]videntiary [s]tandards," 35 U.S.C. § 316(e), which suggests it was intended to establish only the "degree of certainty by which the factfinder must be persuaded" of unpatentability – not to "identify the party who must persuade the [factfinder] to prevail." *Microsoft*, 564 U.S. at 100 n.4 (distinguishing between "standard of proof" and "burden of proof"). That makes sense because the Act elsewhere allocates the burden of persuasion with respect to patentability: to the petitioner to show the "unpatentab[ility]" of existing claims, and to the patent owner to show the "patentab[ility]" of amended claims. 35 U.S.C. § 318(b), (c). Section 316(e) merely applies a preponderance-of-the-

---

[3] Appellant is mistaken (at 12-13) that Congress would have used the word "invalidity" to restrict § 316(e) to existing claims. "Invalidity" is a term particular to district-court proceedings, *see* 35 U.S.C. § 282, and a key distinguishing feature of inter partes review is the "absence of [the] presumption of validity" that applies in civil litigation, 77 Fed. Reg. at 48,697. By using the term "unpatentability" in § 316(e), Congress simply mirrored the term it used in § 318(a) and reinforced that the district-court presumption of validity does not apply in inter partes review. *See* Intervenor Br. 23-24.

evidence standard in the former context; it does not alter the burden of persuasion applicable in the latter.[4]

*Second*, § 316(e)'s introductory clause likewise signals that it is limited to existing claims. In that clause, Congress limited § 316(e) to propositions raised "[i]n an inter partes review instituted under this chapter." *Id.* § 316(e). An "inter partes review," in turn, refers to the underlying proceeding in which a petitioner "request[s] to cancel as unpatentable 1 or more claims of a patent." *Id.* § 311(b) (describing "[s]cope" of such a review). In tethering § 316(e)'s evidentiary standard to "an inter partes review," therefore, Congress intended to confine that standard to "issued claims that were actually challenged in the petition for review." *Nike*, 812 F.3d at 1334. Indeed, § 316 itself distinguishes between the underlying inter partes review and a motion to add new claims to such a review: it directs the Board to promulgate regulations "governing inter partes review under this chapter," 35 U.S.C. § 316(a)(4), but also separate regulations "setting forth standards and procedures for allowing the patent owner to move to amend the

---

[4] Appellant's *amici* also rely on § 318(a), *see* PhRMA Br. 7-8, which requires the Board to "issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)," 35 U.S.C. § 318(a). But that provision merely directs the Board to make a written patentability determination with respect to amended claims; it says nothing about the burden of persuasion the Board should apply when doing so. And the very next subsection describes the analysis the Board should use when making that determination: it should cancel existing claims it finds to "be unpatentable" and incorporate new claims it finds to "be patentable." *Id*. § 318(b).

patent," *id*. § 316(a)(9).  Had Congress intended for § 316(e) to apply in both

contexts, it would have said so expressly.

Appellant argues (at 16-17) that the term "inter partes review" must include

motions to amend because § 316(d) (which governs such motions) begins with a

similar introductory clause.  *See* 35 U.S.C. § 316(d)(1) (applying "[d]uring an inter

partes review").  In fact, that clause demonstrates the opposite.  Section 316(d)(1)

allows a patent owner to "file 1 motion to amend" "[d]uring an inter partes review

instituted under this chapter," *id.*, which suggests that the term "inter partes

review" must refer to the underlying proceeding concerning the original challenged

claims.  After all, only the underlying proceeding is "instituted" in the way that

§ 316(d)'s introductory clause requires.  Moreover, a motion to amend is filed

"[d]uring" that underlying proceeding; it would make no sense to say that a "patent

owner may file 1 motion to amend" *during* a proceeding to evaluate proposed

amended claims (which does not even exist until the motion to amend is filed).

For that reason, the parallel between sections 316(d) and (e) simply reinforces that

their introductory clauses refer to instituted proceedings over existing claims.

*Third*, the Act's legislative history supports the same conclusion.  *See In re

Swanson*, 540 F.3d 1368, 1376 (Fed. Cir. 2008) ("turn[ing] to the legislative

history to further elucidate Congress' intent").  The House Committee Report on

the AIA described a number of "improvements" provided by "inter partes review"

- 12 -

proceedings, including the Act's creation of a "[p]reponderance burden."  H.R. Rep. No. 112-98, pt. 1, at 47.  In describing that evidentiary standard, which is now imposed by § 316(e), the Committee Report explained that "[p]etitioners bear the burden of proving that a *patent is invalid* by a preponderance of the evidence in inter partes review."  *Id*. (emphasis added).  That wording is inconsistent with the notion that § 316 was intended to apply to motions to amend:  proposed amended claims are not yet part of any "patent" and cannot be held "invalid" unless and until the Board grants the patent owner's motion to amend.  *See supra* note 2 (explaining why Congress did not use the term "invalidity" in the final statute).  The Committee's explanation – by using language evocative of existing, rather than amended, claims – therefore suggests that Congress shared the Board's view that § 316(e) should govern only challenges to existing claims.

## B.    The Board's Interpretation Promotes Congress's Purpose Of Improving Patent Quality

### 1.    Placing the burden of persuasion on the patent owner helps to eliminate weak claims

As the Board has shown (at 32-35), its interpretation of Rule 42.20 also accords with the AIA's purpose.  The AIA was Congress's response to a "growing sense that questionable patents are too easily obtained and are too difficult to challenge."  H.R. Rep. No. 112-98, pt. 1, at 39.  Congress therefore created inter partes review "to ensure that the poor-quality patents can be weeded out through

administrative review," 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (Sen.

Schumer), and to serve as "a cheaper, quicker, better alternative" to "costly

litigation in Federal court," *id*. at H4495 (daily ed. June 23, 2011) (Rep. Smith).

By providing an "efficient and streamlined" way for parties to challenge

questionable claims, Congress hoped that inter partes review would "improve

patent quality" and cheaply weed out patent claims "that should not have issued."

H.R. Rep. No. 112-98, pt. 1, at 39-40.

    In *amici*'s experience, inter partes review is currently working well to help

eliminate invalid patent claims.  Placing the burden on petitioners to disprove the

patentability of proposed amended claims, however, would weaken that process

and frustrate Congress's goal of "improving patent quality."  *Id*. at 39.  Indeed,

by the time inter partes review begins, the challenger has already established a

"reasonable likelihood" that the Board will cancel at least one of the challenged

claims as unpatentable.  35 U.S.C. § 314(a).  Once the challenger has met that

initial burden and the patent owner responds by seeking to amend, the patent

owner should bear the burden of persuading the Board that its substitute claims

are patentable despite the apparent unpatentability of its original ones.

    That is particularly true because "substituted claims" adopted during inter

partes review "are not subject to further examination."  *Proxyconn*, 789 F.3d at

1307.  Because proposed substitute claims (unlike issued claims on which

challengers bear the burden of persuasion) have received no scrutiny from a "patent examiner," keeping the burden of persuasion with the patent owner is vital to "ensure[] that proposed substitute claims are critically analyzed before they are entered" in an "issued patent." *Nike*, 812 F.3d at 1333. Indeed, once an amended claim issues, it attains a presumption of validity in future district-court proceedings. *See* 35 U.S.C. § 282(a). The Board's burden-of-persuasion rule has the virtue of preventing untested substitute claims from attaining that presumption despite never having been subject to examination.[5]

The Board's approach also encourages patent owners to engage in "precise claim drafting" in the first instance. *In re Morris*, 127 F.3d 1048, 1056 (Fed. Cir. 1997). As the Supreme Court has recognized, those drafting patents "face powerful incentives to inject ambiguity into their claims," and the patent system needs rules to "[e]liminat[e] that temptation." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). The unduly lenient amendment process requested by Appellant and its *amici* would feed that temptation: patent owners could draft vague or overbroad claims in the first instance, wait to see if they are challenged,

---

[5] Appellant errs in asserting (at 4) that substitute claims need no examination because they are simply "narrower versions" of existing claims. An amended claim does not become patentable merely because it is narrower than the original. In the context of an inter partes review, where the Board necessarily has found a "reasonable likelihood" that the existing claim is unpatentable, 35 U.S.C. § 314(a), and where the motion to amend itself is usually conditional on the original claim being found unpatentable – it is especially critical than any proposed narrowed claim receive rigorous testing. *See* Intervenor Br. 32-34.

and then (if necessary) fall back on a narrower amended claim that the challenger would retain the burden of invalidating.  Under that system, patent owners would have little to lose by attempting to include overbroad claims in the initial patent, as the amendment process would provide them with a ready escape hatch for use in a future inter partes review.

The Board's interpretation, by contrast, discourages patent owners from engaging in such tactics.  If patent owners decide to keep a better-drafted claim in reserve for a future amendment, they do so knowing that they will assume the burden of persuasion on that amended claim.  The Board's current practice thus helps ensure that the AIA continues to "protect the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016) (ellipsis omitted).

### 2. Placing the burden of persuasion on the patent owner helps prevent untested claims from issuing

The Board's approach also serves the public interest by preventing unexamined claims from issuing.  *See* 35 U.S.C. § 316(b) (requiring PTO to consider effect on "the integrity of the patent system").  A challenger typically seeks inter partes review to protect its own business interests – for instance, by seeking to cancel claims the patent owner has accused the challenger of infringing.  Once the Board decides to institute a review, however, the patent owner may decide to "narrow[] the claims such that the petitioner no longer faces a risk of

infringement." *Proxyconn*, 789 F.3d at 1307. In that scenario, the challenger loses any incentive to continue challenging the narrowed substitute claims and likely will decline to oppose the amendment. Under Appellant's rule, such substitute claims would sail through automatically and be incorporated into the issued patent – even if the "patentee" were unable "to establish patentability of [the] substitute claims over the prior art of record." *Id*. That risk has materialized here: because the challenger has settled, a reversal by this Court would likely force the Board to approve Appellant's now-unopposed amended claims "despite the PTO having before it prior art that undermines patentability." *Id.* at 1307-08.

Appellant calls (at 35) this "a perfectly acceptable result" in light of the "litigation-like contested" nature of inter partes review proceedings. But inter partes review "is less like a judicial proceeding and more like a specialized agency proceeding." *Cuozzo*, 136 S. Ct. at 2143. Unlike in most litigation, challengers in an inter partes review "need not have a concrete stake in the outcome"; the Board "may continue to conduct an inter partes review even after the adverse party has settled"; and the Board may (as it did here) "intervene in a later *judicial* proceeding to defend its decision – even if the private challengers drop out." *Id*. at 2143-44. Moreover, new claims cannot issue at all in district-court litigation, which is limited to adjudicating the validity of existing claims.

Those distinctions reveal a fundamental difference between inter partes review and the district-court proceedings to which Appellant tries to analogize it. Unlike civil litigation, one key purpose of inter partes review is "to reexamine an earlier agency decision." *Id*. at 2144. In that way, inter partes review not only "help[s] resolve concrete patent-related disputes," but also serves the distinctly public function of eliminating "patents that should not have issued." *Id*. Allowing untested substitute claims to issue once the challenger stops litigating may comport with the first purpose, but it would do significant damage to the second.

It is no answer that "[o]ther parties will be free" to challenge untested substitute claims in future proceedings. *Cf.* Appellant Br. 36. To begin with, allowing an unpatentable amended claim to issue disserves the public interest even if the claim is later canceled in a subsequent inter partes review. Patent owners should not be afforded a temporary monopoly on the basis of an amended claim that never should have issued.

Placing the onus on a third party to initiate a new challenge to substitute claims also contradicts Congress's intent to "limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112-98, pt. 1, at 40. By the time a motion to amend is entered in an ongoing inter partes review, the challenger has already prepared a petition and paid a fee to file it, *see* 35 U.S.C. § 312; the Board has evaluated the evidence and found a "reasonable likelihood" that a challenged claim

is unpatentable, *id.* § 314(a); and the Board has "conferr[ed]" with the patent owner about the amendment, 37 C.F.R. § 42.121(a).  Forcing a new petitioner to bring a new challenge to an amended claim would let those steps go to waste.  The far more efficient course is to require patent owners to demonstrate the patentability of their substituted claims in the existing proceeding, in which the administrative patent judges are already familiar with the claims and the prior art.  Indeed, Congress intended that inter partes review be completed within "1 year" of institution. 35 U.S.C. § 316(a)(11).[6]  The inefficient cycle of amendments-followed-by-new-challenges Appellant proposes would contravene that intent.

Further, an existing review proceeding may often provide the *only* opportunity to scrutinize the amended claim.  The AIA requires challengers to file any inter partes review petition within "1 year" of being "served with a complaint alleging infringement of the patent," *id.* § 315(b), and the Board has held that the amendment of a patent does not restart that clock, *see BioDelivery Sciences Int'l, Inc. v. MonoSol Rx, LLC*, Case IPR2013-00315, 2013 WL 8563948, at \*3 (PTAB Nov. 13, 2013).  Thus, if a patent owner offers amended claims that the existing

---

[6] As the Board points out (at 21 n.11), inter partes review differs from the prior regime of inter partes reexamination, under which the PTO "follow[ed] its conventional examination approach."  Keeping the burden of persuasion on the patent owner – and thus freeing the Board from the time-consuming process of conventional examination – is in keeping with that distinction.

petitioner declines to oppose, additional challengers may find themselves already time-barred from petitioning for a new review of the added claims.

### 3.    The criticisms of the Board's approach are overblown

**a.**    The Board's interpretation does not place any unreasonable demand on patent owners.  The Board has required patent owners to bear the burden of persuasion on amended claims for more than three years, *see Idle Free*, 2013 WL 5947697, at *4, and there is no evidence that the Board's requirement has extinguished any socially valuable, high-quality claims.  On the contrary, *amici* believe that inter partes review is working well to eliminate bad patents, because the way Congress structured the process ensures that challenged claims are likely to be weak ones that cannot be salvaged through amendment.  For one thing, an inter partes review petitioner must pay filing fees (in addition to its own legal and expert fees that often run to hundreds of thousands of dollars per petition).[7] For another, seeking review creates a risk of estoppel against the challenger, *see* 35 U.S.C. § 315(e), which discourages challengers from seeking review of strong patents.  Given these costs and risks, petitioners rationally do not challenge patent claims that can be easily fixed through amendment.

---

[7] *See* Am. Intell. Prop. L. Ass'n, *2015 Report of the Economic Survey* 38 (June 2015) (estimating costs of $200,000 to $350,000 per inter partes review), http://files.ctctcdn.com/e79ee274201/b6ced6c3-d1ee-4ee7-9873-352dbe08d8fd.pdf.

Against that backdrop – in which petitioners have incentives to challenge only unfixable weak claims, and the Board institutes review only after making a threshold finding of unpatentability, *id*. § 314(a) – there is little risk that keeping the burden of persuasion on patent holders will stifle high-quality claims. If a narrowed claim truly has some patentable distinction over prior art, the patent owner (which should have the best information about its own proposed claims) should have no trouble persuading the Board of that fact. *Cf. Nautilus*, 134 S. Ct. at 2129 ("[T]he patent drafter is in the best position to resolve the ambiguity in patent claims.") (ellipsis omitted).

Appellant insists (at 41) that patent owners cannot possibly discharge their burden of persuasion because of the "relatively short page limit" for motions to amend. But the PTO recently increased that page limit from 15 to 25 pages, *see* 37 C.F.R. § 42.24(a)(1)(vi), and Appellant offers no evidence that the new limit has impeded patent owners from drafting viable motions. To the extent a patent owner in a given case needs an overlength brief to satisfy its burden of persuasion, it is free to ask the Board for additional pages. *Id*. § 42.24(a)(2).

More fundamentally, if the hardship on patent owners were truly so onerous, Appellant and its *amici* would come forward with persuasive examples of high-quality claims extinguished by the Board's approach. They cannot. Consider the brief of PhRMA, whose members are generally thought to own many of the

highest-value U.S. patents.  It offers only two examples (at 16-17) of the supposed "impracticality" of the Board's approach, neither of which involves its members' pharmaceutical patents and neither of which supports overturning the Board.  In the first, the patent owner did "not discuss . . . the patentability" of its substitute claim at all, other than to recycle a "challenge [to] the combinability of the references" the Board had already rejected in canceling the existing claim.  *HTC Corp. v. Advanced Audio Devices, LLC*, Case IPR2014-01154, 2015 WL 9488115, at *20 (PTAB Dec. 29, 2015).[8]  The patent owner lost not due to the burden of persuasion, but because "a person of ordinary skill in the art would have combined the disclosures of the references" that were fatal to the amended claim.  *Id.*

In the second example, the patent owner totally "fail[ed] to address" key arguments presented by the petitioner against the amended claim, despite "us[ing] less than 21 of the 25 pages permitted for motions to amend."  Final Written Decision at 31, *Zhongshan Broad Ocean Motor Co. v. Nidec Motor Corp.*, Case IPR2014-01121 (PTAB May 9, 2016) (Paper 86), https://e-foia.uspto.gov/Foia/RetrievePdf?system=PRPS&flNm=IPR2014-01121_86.  Neither example – both

---

[8] The Board went on to note that the motion also failed because it "lack[ed] sufficient discussion of the prior art known to [the patent owner]."  *HTC*, 2015 WL 9488115, at *21.  That discussion was an additional justification for the Board's decision but was unnecessary to the outcome.  To the extent PhRMA has objections to the specific way the Board has implemented its requirement that the patent owner "show patentable distinction over . . . prior art known to the patent owner," *Idle Free*, 2013 WL 5947697, at *4, it can raise those separate concerns for this Court to evaluate in an appropriate case.

of which involved basic failures by the patent owner to engage with the core arguments against their claims – suggests that the Board's position is "impractical[]." PhRMA Br. 16.  Indeed, it is doubtful that the burden of persuasion even mattered to the outcome in either case.

b.    With no meaningful examples of any problem created by the Board's interpretation, Appellant and its *amici* fall back on the statistic that, as of April 2016, the Board had granted only six of 118 motions to amend.  *See* Amendment Study[9] at 4.  But the infrequency with which patent owners have succeeded on motions to amend could well "reflect the fact that no amendment could save the inventions at issue, *i.e.*, that the patent should have never issued at all."  *Cuozzo*, 136 S. Ct. at 2145.  The Board's refusal to allow amended claims in such circumstances comports fully with Congress's objective to "improve patent quality" through inter partes review.  H.R. Rep. No. 112-98, pt. 1, at 40.

The availability of reissue proceedings further alleviates any concern over the relatively low amendment rate Appellant cites.  *See* 35 U.S.C. § 251.  If a patent owner "through error" includes an invalid claim in a patent, it may ask the PTO to "reissue the patent for the invention disclosed in the original patent . . . in accordance with a new and amended application."  *Id*. § 251(a).  Patent owners

---

[9] PTO, *Patent Trial and Appeal Board Motion to Amend Study* (Apr. 30, 2016) ("Amendment Study"), https://www.uspto.gov/sites/default/files/documents/2016-04-30%20PTAB%20MTA%20study.pdf.

often use that process successfully: there were 887 reissue applications filed in 2015, of which 531 (nearly 60%) were granted.[10] Accordingly, to the extent a patent owner needs to amend a patent to correct an error that was made through "inadvertence, accident, or mistake," *In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986), the reissue process obviates any need for patent owners to rely on a motion to amend in inter partes review to save their patents.

In any event, there is no evidence that the burden of persuasion is typically dispositive in cases where the patent owner unsuccessfully seeks to amend in inter partes review. In 81% of decisions denying (or denying-in-part) a motion to amend, the Board did so at least in part based on statutory criteria (rather than a patent owner's mere failure to show a patentability over prior art). *See* Amendment Study at 4. And, as of April 2016, the Board had denied only one motion to amend "based solely on a patent owner's failure to show patentability over the prior art in general." *Id*. Appellant's criticism (at 41) that the burden of persuasion has destroyed the viability of "the amendment option" is therefore overstated.

Finally, if patent owners believe the Board is rejecting valid substitute claims (which no evidence suggests), they retain other tools to address that problem. Wherever the burden of persuasion lies, the Board may not deny a motion to amend if doing so would be "arbitrary, capricious, an abuse of

---

[10] *See* PTO, *Performance and Accountability Report for FY2015*, at 184, https://www.uspto.gov/sites/default/files/documents/USPTOFY15PAR.pdf.

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As

this Court recently demonstrated, that requirement retains real teeth. *See Veritas*

*Techs. LLC v. Veeam Software Corp.*, --- F.3d ----, 2016 WL 4525278, at *6-7

(Fed. Cir. Aug. 30, 2016) (vacating under the APA the Board's denial of a motion

to amend). If the Board's basis for denying a motion to amend is "unreasonable,"

normal APA review is more than up to the task of remedying the error. *Id*. This

Court should continue to utilize that process to ensure that patent owners have an

adequate opportunity to demonstrate the patentability of amended claims. But it

should not put a thumb on the scale in favor of such amendments by reversing the

burden of persuasion that the Board has reasonably placed on the patent owner.

## II.    THE BOARD MAY SUA SPONTE RAISE PATENTABILITY CHALLENGES TO A PROPOSED AMENDED CLAIM

The other question posed by this Court asks whether the Board may sua

sponte raise patentability challenges to a proposed substitute claim. The answer to

that second question flows directly from the first. Because patent owners properly

bear the burden of persuasion in demonstrating the patentability of a proposed

amended claim, it follows that the Board itself may raise patentability challenges

that the patent owner must overcome to prevail on an amendment.

Allowing the Board to raise such challenges serves the same statutory

objectives outlined above. *See supra* Part I.B. Inter partes review is a "specialized

agency proceeding" intended to do more than merely "resolve concrete patent-

related disputes among parties." *Cuozzo*, 136 S. Ct. at 2143-44. One of its "basic purposes" is to help keep patents "within their legitimate scope," *id*. at 2144, and permitting the Board to raise sua sponte patentability challenges to amended claims furthers that purpose. *See supra* Part I.B.2; *see also Proxyconn*, 789 F.3d at 1307-08 (describing the need for scrutiny of "substitute claims" that a "petitioner may choose not to challenge"). Were it otherwise, patent owners could evade meaningful scrutiny of their substituted claims by settling with the challenger (or by narrowing the claim to eliminate the challenger's motivation to continue litigating the amendment). Such a result would pervert the statutory scheme and allow unexamined claims – even ones that differ only trivially from an invalidated claim – to issue based merely on the private decisions of one petitioner.

Appellant appears to concede (at 45-46) that its arguments on this second question depend on the burden-of-persuasion issue. If this Court agrees with the Board that the patent owner properly bears the burden of persuasion on a motion to amend, then there is no dispute that the Board should be allowed to raise patentability challenges sua sponte. The primary case on which Appellant and its *amici* rely, *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364 (Fed. Cir. 2016), merely demonstrates the point. There, the Court found "no support for the PTO's position that the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an [inter partes

review],"" and instead held that "the Board must base its decision on arguments that were advanced by a party." *Id.* at 1381. But *Magnum* expressly stated, and Appellant admits (at 46), that the Court's holding rested on § 316(e)'s requirement that "the petitioner . . . bear[] the burden of proof" in challenging existing claims. 829 F.3d at 1380. Because § 316(e) does not govern proposed amended claims, *see supra* Part I.A.2, *Magnum* offers Appellant no help here.

Moreover, even if this Court were to shift the burden of persuasion away from the patent owner, *Magnum* still would not foreclose the Board from raising its own patentability challenges to a proposed substitute claim. *Magnum* did not involve the situation here, in which a challenger drops out and no longer opposes a motion to amend.[11] In that unique context, allowing the Board to raise patentability challenges is not the Board inventing new arguments "on behalf of petitioners," *Magnum*, 829 F.3d at 1381; it is the Board discharging its duty to ensure that untested amended claims do not issue without critical examination. After all, *Magnum* was predicated on the assumption of a "trial" in which the arguments against a challenged claim are "advanced by a party." *Id.* When the challenger drops out and declines to litigate a motion to amend, that assumption no longer holds. In such circumstances, the Board should not be required to allow a

---

[11] To the extent the Board suggests otherwise (at 35-36), *amici* respectfully disagree. The position expressed in the Board's *en banc* brief on this issue (in contrast to its position on the burden of persuasion) is not based on any formal rule or reasoned agency decision, and so is not entitled to deference.

proposed amended claim to issue in the face of known prior art that renders the claim unpatentable, merely because the petitioner is no longer litigating the issue.

Indeed, allowing the Board independently to scrutinize amended claims conforms to the broader statutory scheme, which provides the PTO broad powers to examine the patentability of claims over prior art. *See*, *e.g.*, 35 U.S.C. § 303(a) (granting the PTO Director plenary authority, on her "own initiative, and [at] any time," to "determine whether a substantial new question of patentability is raised by" prior patents and printed publications). This Court should not extend *Magnum* beyond its facts to forbid the Board from exercising such authority here.

Finally, the Court can and should allow sua sponte patentability challenges to amended claims while also addressing *Magnum*'s concern that the patent owner be afforded "a chance to respond." 829 F.3d at 1381; *see* Appellant Br. 48-50. The requirement that the Board give fair notice of patentability challenges, which flows from the APA's procedural protections, *see* 5 U.S.C. § 554(b)(3), is sufficient to safeguard patent owners' interests. And, thus far, there is every indication that the Board is providing patent owners with sufficient notice in cases involving motions to amend. *See*, *e.g.*, *Proxyconn*, 789 F.3d at 1308 ("[t]his is not a case in which the patentee was taken by surprise"); *Prolitec*, 807 F.3d at 1365 ("[W]e also cannot find a denial of procedural rights . . . based on an insufficient notice or opportunity to respond."). If the Board in some future case denies a

motion to amend without adequate notice, this Court can address the issue at the appropriate time. *Cf. Veritas*, 2016 WL 4525278, at \*6-7. But that hypothetical possibility should not foreclose the Board from raising proper challenges to amended claims that it believes will threaten Congress's aim of "improv[ing] patent quality." *Proxyconn*, 789 F.3d at 1308.

## CONCLUSION

The Court should hold that the Board may place the burden of persuasion on the patent holder to demonstrate the patentability of proposed amended claims and that the Board may sua sponte raise patentability challenges to such claims.

Respectfully submitted,

  /s/ *John Thorne*

MATTHEW J. HULT                    JOHN THORNE
INTEL CORPORATION                  JOSHUA D. BRANSON
2200 Mission College Blvd.        KELLOGG, HUBER, HANSEN, TODD,
Santa Clara, California 95054        EVANS & FIGEL, P.L.L.C.
(415) 378-4064                     1615 M Street, N.W., Suite 400
                                   Washington, D.C. 20036
                                   (202) 326-7900

                                   *Counsel for Amici Curiae*

November 3, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on     November 3, 2016
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

John Thorne                                              /s/ John Thorne
_____                        _____
        Name of Counsel                                     Signature of Counsel

Law Firm                    Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.

Address                     1615 M Street, NW, Suite 400

City, State, Zip            Washington, D.C. 20036

Telephone Number            (202) 326-7992

Fax Number                  (202) 326-7999

E-Mail Address              jthorne@khhte.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

[ Reset Fields ]

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations.  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief contains 7,000 words.  This certificate was prepared in reliance on the word count of the word-processing system (Microsoft Office Word 2013) used to prepare this brief.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2013 in 14-point Times New Roman font.

  /s/ *John Thorne*
John Thorne
*Counsel for Amici Curiae*

November 3, 2016